Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 16, 2021

**2021 CO 12**

**No. 19SC854, *In re Marriage of Zander*—Uniform Dissolution of Marriage Act ("UDMA")—Colorado Marital Agreement Act ("CMAA")—Exceptions to Presumption of Marital Property—"Valid Agreement" Exception—Partial Performance Doctrine.**

All property acquired by either spouse during a marriage is generally considered marital property, which is subject to equitable division during a marriage dissolution proceeding.  But there are four statutory exceptions to this rule.  One of those exceptions is property excluded from the marital estate by a "valid agreement" of the parties.  In this case, the parties entered into an oral agreement to exclude their retirement accounts and inheritances from the marital estate.

The supreme court holds that the parties' 2007 oral agreement was not a valid agreement because, at the time, Colorado statutory law required that all agreements between spouses be in writing and signed by both parties.  The court further holds that the parties' conduct after entering into the oral agreement could not be treated as partial performance that satisfied the writing and signature

requirements.  Accordingly, the supreme court affirms the judgment of the court of appeals and remands the case for further proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2021 CO 12

### Supreme Court Case No. 19SC854
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA1209

### In re the Marriage of

### Petitioner:

Denise Zander,

### and

### Respondent:

John Zander.

### Judgment Affirmed
*en banc*
February 16, 2021

**Attorneys for Petitioner:**
Anthony J. DiCola
Heather A. Stein
*Hot Sulphur Springs, Colorado*

**Attorney for Respondent:**
Leigh A. Rosser
*Edwards, Colorado*

**Attorneys for Amicus Curiae Colorado Chapter of the American Academy of Matrimonial Lawyers:**
Lass Moses Ramp & Cooper LLC
Patricia A. Cooper
Marie Avery Moses
*Denver, Colorado*

**Attorneys for Amicus Curiae Family Law Section of the Colorado Bar Association:**
Sherr Puttmann Akins Lamb PC
Courtney Radtke McConomy
*Greenwood Village, Colorado*

Senn Visciano Canges P.C.
James S. Bailey
*Denver, Colorado*

Lass Moses Ramp & Cooper, LLC
Katharine Lum
*Denver, Colorado*

Harrington Brewster Mahoney Smits, P.C.
Emma A. Fletcher
*Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1     There is an old saying that "a verbal contract isn't worth the paper it's written on."[1]  Of course, some oral contracts are enforceable under the law.  But, despite its shortcomings, the saying accurately captures the notion that a party seeking to enforce an oral agreement may have to swim upstream.  This marriage dissolution case illustrates the point.  The petitioner is attempting to enforce an oral agreement she entered into with her husband to exclude the couple's retirement accounts and inheritances from being considered "marital property," which is subject to equitable division in a dissolution proceeding.  The issue for us, though, isn't whether the parties entered into the agreement.  That ship has sailed — the district court found that the agreement existed, and that ruling wasn't appealed.  Our task is to determine whether the agreement was valid despite being oral, and, alternatively, whether the parties' partial performance could otherwise render the oral agreement valid.

¶2     Our General Assembly has declared that property acquired during a marriage is generally considered "marital property."  § 14-10-113(2), C.R.S. (2020).

---

[1] Though this quote is often attributed to Samuel Goldwyn, the legendary movie mogul, *see, e.g.*, *Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1092 (11th Cir. 2014), its origin is disputed, as it appears to have been uttered in various forms by different people over the years, *Verbal Contract*, Quote Investigator (Jan. 6, 2014), https://perma.cc/P2K2-BUC8.

But there are four statutory exceptions to this rule. *See id.* One of those exceptions, the only one implicated here, is property excluded from the marital estate by a "valid agreement" of the parties. § 14-10-113(2)(d). The specific issue we confront is whether the parties' agreement to exclude their retirement accounts and inheritances from the marital estate had to be in writing and signed in order to be a "valid agreement." Like the court of appeals, we answer the question in the affirmative.

¶3 We hold that the parties' 2007 oral agreement was not a valid agreement because, at the time, Colorado statutory law required that all agreements between spouses be in writing and signed by both parties. §§ 14-2-302(1), 14-2-303, 14-2-305, 14-2-306, C.R.S. (2007). We further hold that the court of appeals correctly determined that the parties' conduct after entering into the oral agreement could not be treated as partial performance that satisfied the writing and signature requirements. Accordingly, we affirm the court of appeals' judgment and remand with instructions to return the case to the district court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4 Denise Zander ("Wife") and John Zander ("Husband") were married in 2001. Each spouse entered the marriage with a separate retirement account, and each spouse received a separate inheritance during the marriage. In 2016, Wife

initiated a dissolution proceeding. The district court dissolved the parties' marriage in 2018. In the process, it divided the marital estate equally. But the court excluded from the marital estate the parties' retirement accounts and inheritances in toto.[2] It did so because it agreed with Wife that the parties entered into an oral agreement in 2007 to treat their retirement accounts and inheritances as separate property. The purported validity of that oral agreement is the centerpiece of Wife's appeal and the focus of our analysis.

¶5      In attempting to persuade the district court that there was an oral agreement to exclude the retirement accounts and inheritances from the marital estate, Wife first pointed to a 2007 amendment to the revocable living trust that she and Husband had created as their estate planning vehicle. The amendment explicitly removed the retirement accounts from the trust. It was the oral agreement, she said, that prompted the amendment to the trust. And, continued Wife, the

---

[2] The value of retirement accounts at the time of a marriage is considered separate property, but any increase in that value during the marriage is considered marital property. *See* § 14-10-113(4). And the value of an inheritance acquired during a marriage is considered separate property, but any increase in that value during the marriage is considered marital property. *See* § 14-10-113(4), (2)(a)–(b). For the sake of convenience, like the parties, we do not distinguish between (1) the value of the retirement accounts at the time of the marriage and any increase in that value during the marriage, or (2) the value of the inheritances at the time of acquisition and any increase in that value during the marriage.

inheritances were not mentioned in the amendment because they were never included in the trust.

¶6 Wife also asked the district court to consider a 2014 email from Husband to his son from a prior marriage. In that email, Husband stated that his son and daughter were 50/50 beneficiaries of the Husband's retirement account. This communication, asserted Wife, corroborated the oral agreement because it suggested that she had no ownership interest in Husband's retirement account.

¶7 For his part, Husband denied that the parties had entered into the oral agreement, but maintained that, even had they done so, the agreement would have been invalid because it wasn't in writing or signed.[3]

¶8 The district court agreed with Wife. Relying on its credibility findings, the 2007 amendment to the trust, and Husband's 2014 email to his son, it ruled that Wife had established the existence of an oral agreement to exclude the parties' retirement accounts and inheritances from the marital estate. Further, drawing guidance from basic principles of contract law, the court concluded that the agreement didn't have to be in writing and signed in order to be valid.

---

[3] Though Husband refuted the existence and validity of the oral agreement, he took the position that his own retirement account should be deemed his separate property because he had regularly withdrawn funds from that account to support the parties' joint finances throughout the marriage.

Alternatively, the court invoked a partial performance exception in determining that the agreement was valid. The court reasoned that the oral agreement was valid irrespective of any writing and signature requirements because Husband and Wife had partially performed it by keeping "their [retirement] accounts/pensions and their inheritances . . . out of their estate planning trust." The court also remarked that Husband's email to his son showed Husband had "acted in accordance with the parties' agreement."

¶9 Husband appealed, and a division of the court of appeals reversed the district court's judgment. *In re Marriage of Zander*, 2019 COA 149, ¶ 31, __ P.3d __. The division held that an agreement between spouses to exclude property from the marital estate must be in writing and signed by both parties. *Id.* at ¶ 16. Further, the division was unmoved by the district court's reliance on the concept of partial performance as an exception to the writing and signature requirements. *Id.* at ¶ 24. Because the parties' marital agreement was oral, the division declared it invalid. *Id.* at ¶ 29.

¶10 Wife then filed a petition requesting our review. We granted her petition, but we reframed the two issues she presented.[4]

---

[4] The reframed issues we agreed to review are the following:

## II. Analysis

¶11     The questions before us require us to interpret multiple statutes.   In particular, we must construe section 14-10-113, which is part of the Uniform Dissolution of Marriage Act ("UDMA"), as well as sections 14-2-302 to -303 and -305 to -306, which were part of the Colorado Marital Agreement Act ("CMAA") at the time the parties entered into the oral agreement.[5]

¶12     We first set forth the controlling standard of review and the relevant principles of statutory interpretation.  We then construe the statutory provisions implicated by the parties' contentions.

---

1. Whether the court of appeals erred when it concluded that a "valid agreement" pursuant to section 14-10-113(2)(d), C.R.S. (2019), of the Uniform Marital Dissolution Act must meet the formalities of a "marital agreement" pursuant to section 14-2-302(1), C.R.S. (2007), of the Colorado Marital Agreements Act.

2. Whether the court of appeals erred when it concluded that there is no partial performance exception to section 14-2-302(1), C.R.S. (2007), of the Colorado Marital Agreements Act.

[5] Section 14-10-113 of the UDMA, an Act adopted in 1971, Ch. 130, sec. 1, § 14-10-113, 1971 Colo. Sess. Laws 520, has not been amended since 2004; thus, its pertinent subsections read the same today as they did during the relevant timeframe in 2007.  The CMAA, which was adopted in 1986, Ch. 118, sec. 1, § 14-2-301, 1986 Colo. Sess. Laws 713, was replaced on July 1, 2014, by the Uniform Premarital and Marital Agreements Act ("UPMAA"), Ch. 239, sec. 1, § 14-2-301, 2013 Colo. Sess. Laws 1159; the UPMAA is codified at §§ 14-2-301 to -313, C.R.S. (2020).  Because the parties entered into the oral agreement in 2007, we rely on the UDMA and the CMAA.

## A. Standard of Review and Relevant Principles of Statutory Interpretation

¶13    We review issues of statutory interpretation de novo. *Bill Barrett Corp. v. Lembke*, 2020 CO 73, ¶ 14, 474 P.3d 46, 49. When interpreting a statute, we aim to ascertain and effectuate the legislature's intent. *Id.* Our starting point is always the plain language of the statute. *People in Interest of G.S.S.*, 2020 CO 32, ¶ 11, 462 P.3d 592, 595. "If the statutory language is clear, we apply it as written and need not resort to other rules of statutory construction." *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016. Absent a legislative definition, we construe a statutory term in accordance with its ordinary and natural meaning. *Cowen v. People*, 2018 CO 96, ¶ 14, 431 P.3d 215, 218. To discern the ordinary and natural meaning of a term that's not statutorily defined, we may consult a recognized dictionary. *People v. Harrison*, 2020 CO 57, ¶ 16, 465 P.3d 16, 20.

¶14    In reviewing a statute, we must give consistent effect to all its parts, and we must construe each provision in harmony with the overall legislative design. *Mook v. Bd. of Cnty. Comm'rs*, 2020 CO 12, ¶ 24, 457 P.3d 568, 574. Relatedly, we are required to "adopt a construction that avoids or resolves potential conflicts" with other statutes and gives "effect to all legislative acts, if possible." *Id.*, 457 P.3d at 575 (quoting *People v. Stellabotte*, 2018 CO 66, ¶ 32, 421 P.3d 174, 180).

## B. Application

¶15     Section 14-10-113, which addresses the "[d]isposition of property" in a dissolution proceeding, calls on the district court to "divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors." § 14-10-113(1). Subsection (2) of the same statute generally defines "marital property" as "all property acquired by either spouse subsequent to the marriage." § 14-10-113(2). But subsection (2) contains four exceptions:

> (a) Property acquired by gift, bequest, devise, or descent;
> (b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
> (c) Property acquired by a spouse after a decree of legal separation; and
> (d) Property excluded by valid agreement of the parties.

*Id.*

¶16     In line with subsection (2), subsection (3) creates a "presumption of marital property" with respect to "all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation." § 14-10-113(3). However, that presumption "is overcome by a showing that the property was acquired by a method listed" in one of the four exceptions in subsection (2). *Id.* We deal here only with the last exception—property excluded via a "valid agreement" of the parties ("exception (d)").

10

¶17 The district court found that the parties entered into an oral agreement in 2007 to exclude their retirement accounts and inheritances from the marital estate. But we must decide whether the district court then erred in ruling that the oral agreement was "valid," as that term is used in exception (d). The term "valid" is not defined in section 14-10-113. Nor is it defined anywhere else in the UDMA. Given the lack of a statutory definition, we must construe the term by giving it its ordinary and natural meaning. *Cowen*, ¶ 14, 431 P.3d at 218. The term "valid" is ordinarily and naturally understood as referring to something that is effective and enforceable under the law. *See Valid*, Merriam-Webster Online Dictionary, https://perma.cc/3GEV-83BB (defining "valid" as "having legal efficacy or force, *especially*: executed with the proper legal authority and formalities," such as "a *valid* contract"); *see also Valid*, Black's Law Dictionary (11th ed. 2019) (defining "valid" to mean, as relevant here, "[l]egally sufficient").

¶18 Notably, the district court appeared to view the term "valid" in exception (d) the same way we do. But the court then turned to basic contract principles to determine whether the parties' oral agreement was effective and enforceable under the law. This was error. Though we appreciate the court's rationale, it is out of sync with sections 14-2-302 to -303 and -305 to -306 of the CMAA, which specifically set forth the requisite legal formalities for a marital agreement in 2007.

11

¶19 In 2007, section 14-2-302(1) defined a "marital agreement" as "an agreement . . . between present spouses, but only if signed by both parties prior to the filing of an action for dissolution of marriage or for legal separation." In the same vein, section 14-2-303 explicitly provided that a marital agreement was required to "be in writing and signed by both parties." Section 14-2-305 confirmed that a marital agreement executed during the marriage became effective "upon the signatures of both parties." And, once a marital agreement became effective, it could only be amended or revoked "by a written agreement signed by both parties." § 14-2-306.[6] Thus, in 2007, when the CMAA was in effect, Colorado law required that marital agreements be in writing and signed by both spouses.

¶20 In our view, there is no conflict between the UDMA and the CMAA. The UDMA, on the one hand, allows spouses to exclude property from the marital estate through a "valid agreement"; such an agreement overcomes the statutory presumption of marital property. The CMAA, on the other hand, specified—much as the Uniform Premarital and Marital Agreements Act ("UPMAA") does today—

---

[6] The UPMAA contains writing and signature requirements similar to those set forth by its predecessor. *See, e.g.*, § 14-2-306, C.R.S. (2020) ("A premarital agreement or marital agreement must be in a record and signed by both parties."); § 14-2-307, C.R.S. (2020) ("A marital agreement is effective on signing by both parties.").

the requisite legal formalities of all marital agreements, including an agreement to exclude property from the marital estate pursuant to exception (d). Based on the CMAA's requisite legal formalities, an agreement between spouses in 2007 to exclude property from the marital estate had to be in writing and signed by both parties. *See, e.g.*, § 14-2-302(1). Because the 2007 agreement between Husband and Wife was neither in writing nor signed by both parties, it did not fulfill the requisite legal formalities under the CMAA. Consequently, it was not a "valid agreement" for purposes of exception (d).

¶21 And, like the division, we are not persuaded by the district court's reliance on the partial performance doctrine as an exception to the writing and signature requirements. While partial performance may allow enforceability of some oral agreements under general contract law, that is no basis to import an exception into the CMAA. "We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate." *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo. 1994). Had the legislature wanted to permit the enforcement of partially performed oral marital agreements, it presumably would have said so. Instead, it proclaimed, in no uncertain terms, that all marital agreements must be in writing and signed by both parties. Hence, regardless of whether there was partial performance by the parties here, the

13

agreement cannot be enforced because it was neither in writing nor signed by both parties.

¶22 We recognize the concern expressed by amici curiae that today's decision might detrimentally impact couples who cannot afford to retain an attorney to assist them in executing a valid agreement that overcomes the presumption of marital property. But "[i]t is not for the courts to enunciate the public policy of the state if, as here, the General Assembly has spoken on the issue." *Grossman v. Columbine Med. Grp., Inc.*, 12 P.3d 269, 271 (Colo. App. 1999) (citing *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1387 (Colo. 1997)). "The General Assembly is the branch of government charged with creating public policies, and the courts may only recognize and enforce such policies." *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 553 (Colo. 1997). To the extent that a change in the law is desirable, the place to accomplish that is at the state legislature, across the street from our courthouse.

### III. Conclusion

¶23 We hold that in 2007, when the CMAA was in effect, an agreement between spouses to exclude property from the marital estate had to be in writing and signed by both parties. Because the 2007 agreement between the parties in this case was neither in writing nor signed by both parties, it was not valid. We further hold that the parties' conduct after entering into their oral agreement could not be

14

treated as partial performance that satisfied the writing and signature requirements of the CMAA. Accordingly, we affirm the division's judgment and remand with instructions to return the case to the district court for further proceedings consistent with this opinion.