23CA0920 Marriage of Heap 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0920 Boulder County District Court No. 20DR30407 Honorable J. Keith Collins, Judge In re the Marriage of Robert Bradford Heap, Appellant, and Carol Linda Vilate, Appellee. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division III Opinion by JUDGE MOULTRIE Yun and Davidson*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 The W Law, Emily D. Warren, Carolyn C. Witkus, Denver, Colorado, for Appellant Dietze and Davis, P.C., Tucker M. Katz, Boulder, Colorado, for Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023 
 1 ¶ 1 Robert Bradford Heap (husband) appeals the permanent orders entered following the dissolution of his marriage to Carol Linda Vilate (wife) setting aside as wife’s separate property $285,000 of equity in the marital home. We affirm. I. Background ¶ 2 The parties were married in October 1999 and purchased the marital home in July 2010. ¶ 3 During the marriage, the parties worked together in the restaurant industry. They owned and operated various establishments where husband provided the culinary services and wife managed the business operations. Not all of their restaurant ventures were successful; before purchasing the marital home, they lost another home because of debts associated with a failed restaurant. ¶ 4 When the parties purchased the marital home, wife contributed $285,000 that she received from her parents — a gift 
 2 characterized as her “inheritance.”
1 In July 2016, the parties executed a notarized agreement (July agreement) that, as relevant here, stated: [Husband] and [wife], enter into a voluntary agreement in regards to the sale or distribution of assets of the [marital home]. The distribution of assets or funds would be as follows: [Wife] will retain the amount of $285,000 that was given to her . . . by her parents. . . . If the house is sold [husband and wife] would split the remaining profits of the house. . . . ¶ 5 Husband filed a petition for dissolution of marriage in December 2020. During the dissolution proceedings, husband contested the enforceability of the July agreement as a valid marital agreement, asserting that (1) he and wife lived separately at the time of signing the agreement, and he signed the agreement to try 1 Though characterized by wife as an “inheritance,” we conclude the transfer of funds wife received from her parents is more appropriately described as a gift because she received and accepted the funds that her parents intended to give to her. Compare In re Marriage of Balanson, 25 P.3d 28, 37 (Colo. 2001) (“In order to qualify as a ‘gift,’ a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift.”), with In re A.M.D., 78 P.3d 741, 743 (Colo. 2003) (“A monetary inheritance is a particular form of a ‘monetary gift’ — it is simply testamentary, rather than inter vivos, in nature.”). 
 3 to keep their marriage together; (2) he didn’t understand what he was signing due to MDMA therapy he received in the spring of 2015; and (3) the agreement lacked conspicuous waiver language as required by section 14-2-309(3), C.R.S. 2023. ¶ 6 The district court found the July agreement enforceable because (1) the agreement was in writing and signed by both parties; (2) the parties were not contemplating a dissolution or legal separation when they signed the agreement; (3) husband signed the agreement more than a year after completing MDMA therapy and understood what he was signing; (4) the language in the agreement was clear and did not require conspicuous language as husband did not waive any rights; and (5) the agreement was not unconscionable. ¶ 7 The district court then allocated $285,000 of equity in the marital home to wife as her separate property. ¶ 8 Husband appeals the district court’s finding that the July agreement was enforceable and its resulting allocation of $285,000 
 4 in equity to wife as her separate property. Husband also appeals the district court’s allocation of state and federal tax liabilities. Both parties request appellate attorney fees. II. Standard of Review ¶ 9 The classification of property as marital or separate is a legal determination based on resolution of factual disputes. In re Marriage of Krejci, 2013 COA 6, ¶ 3. And while we defer to the trial court’s factual findings, we independently review the legal standard the court applied. Id. III. Applicable Legal Principles A. Disposition of Marital Property ¶ 10 Under the Uniform Dissolution of Marriage Act (UDMA), a court “shall set apart to each spouse [their] property and shall divide the marital property” in a proceeding for dissolution of marriage. § 14-10-113(1), C.R.S. 2023. And “marital property” is all property acquired by either spouse after the date of marriage except property described in the four statutory exceptions set forth 
 5 in section 14-10-113(2).
2 See In re Marriage of Blaine, 2021 CO 13, ¶ 3. ¶ 11 One statutory exception is property “excluded by valid agreement of the parties.” § 14-10-113(2)(d). However, “[t]he term ‘valid’ is not defined in section 14-10-113. Nor is it defined anywhere else in the UDMA.” In re Marriage of Zander, 2021 CO 12, ¶ 17. “The term ‘valid’ is ordinarily and naturally understood as referring to something that is effective and enforceable under the law.” Id. ¶ 12 Regarding interspousal gifts, the supreme court has held that “[p]roperty that is placed in joint tenancy by a spouse during the marriage reflects an intent by the donor spouse to make a gift to the marriage. Thus, such property may be presumed to be marital property absent clear and convincing evidence to the contrary.” In re Marriage of Balanson, 25 P.3d 28, 37 (Colo. 2001) (citations omitted); see also Krejci, ¶ 2 (a gift by a third-party donor during 2 The exceptions are (1) property acquired by gift, bequest, devise, or descent; (2) property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent; (3) property acquired by a spouse after a decree of legal separation; and (4) property excluded by valid agreement of the parties. § 14-10-113(2)(a)-(d), C.R.S. 2023. 
 6 the marriage that increases the value of a jointly titled asset of the spouses is presumably a gift to the marriage, and that presumption can only be rebutted by clear and convincing evidence). B. Marital Agreements ¶ 13 Under the Uniform Premarital and Marital Agreements Act (UPMAA), a “marital agreement” is “an agreement between spouses who intend to remain married which affirms, modifies, or waives a marital right or obligation during the marriage or at . . . marital dissolution . . . or the occurrence or nonoccurrence of any other event.” § 14-2-302(2), C.R.S. 2023. A “marital right or obligation” arises “between spouses because of their marital status” and includes, but is not limited to, “[a] right to property, including characterization, management, and ownership.” § 14-2-302(4)(b). ¶ 14 Section 14-2-309 governs enforceability of agreements under the UPMAA and says that a marital agreement is unenforceable if the party against whom enforcement is sought proves, as relevant here, that the agreement did not include a notice of waiver of rights under section 14-2-309(3) or a plain-language explanation of the marital rights being modified or waived by the agreement, unless 
 7 the party had independent legal representation when the agreement was signed. § 14-2-309(1)(c). ¶ 15 Section 14-2-309(3) requires a notice of waiver of rights to include language “conspicuously displayed” and substantially similar to the following: If you sign this agreement, you may be: Giving up your right to be supported by the person you are marrying or to whom you are married. Giving up your right to ownership or control of money and property. Agreeing to pay bills and debts of the person you are marrying or to whom you are married. Giving up your right to money and property if your marriage ends or the person to whom you are married dies. Giving up your right to have your legal fees paid. § 14-2-309(3). ¶ 16 Marital agreements, like other contracts, should be construed to give effect to the parties’ intent, and where the agreement’s terms are unambiguous, we determine the parties’ intent from the language of the instrument itself. In re Estate of Gadash, 2017 COA 54, ¶ 40. 
 8 C. Attorney Fees ¶ 17 In any civil proceeding, the court shall assess attorney fees if it finds that an attorney or party brought or defended an action that was substantially frivolous, groundless, or vexatious. § 13-17-102(4), C.R.S. 2023. Under the UDMA, and after considering the financial resources of both parties, the court may order a party to pay to the other party a reasonable amount for the cost of maintaining or defending any proceeding under the UDMA, which includes attorney fees. § 14-10-119, C.R.S. 2023. ¶ 18 Under C.A.R. 39(a)(2), if a judgment is affirmed on appeal, “costs are taxed against the appellant.” And under C.A.R. 39.1, attorney fees may be recoverable if the appellate court in its discretion determines the requesting party is entitled to an award of attorney fees for the appeal. The appellate court may also remand those determinations to the district court. See id. IV. Discussion A. Stipulation Regarding Tax Liabilities and Debt ¶ 19 In November 2023, the parties reached an agreement that resolved all matters concerning the allocation of tax liabilities and filed a joint motion requesting to withdraw husband’s tax argument 
 9 and for a mandate to the district court to adopt the stipulation. This court granted in part the joint motion to allow husband to withdraw his tax argument but deferred to the assigned division the determination of whether to remand the stipulation to the district court. We conclude that remanding the parties’ tax stipulation to the district court for adoption as an order of the court is appropriate. B. The July Agreement is an Enforceable Marital Agreement ¶ 20 Husband argues
3 that the district court erred in finding the July agreement enforceable because the agreement lacked a notice of waiver with conspicuous language as required by section 14-2-309(3). Wife argues that the July agreement is enforceable because it contained a plain language explanation of the marital rights husband was modifying or waiving should the marital home 3 At trial, husband argued the July agreement was unenforceable because he was under “duress” when he signed the agreement because the parties signed it “right after” husband completed MDMA therapy. Wife testified that husband completed the MDMA therapy more than a year before the parties signed the July agreement, and the district court did not credit husband’s testimony that his memory was “a little foggy” surrounding the execution of the agreement. Because husband hasn’t argued the court’s findings and conclusions on this issue were erroneous here, we deem this argument abandoned. 
 10 be sold by describing the amount of wife’s separate property interest ($285,000) and the basis for her claiming it as separate property. ¶ 21 In reasoning that the July agreement was enforceable, the district court found that the language of the agreement was clear, and conspicuous waiver language wasn’t required because husband didn’t waive any rights by signing it. ¶ 22 We disagree with the district court’s conclusion that husband didn’t waive any rights by signing the July agreement, but we agree that the July agreement’s language was clear. ¶ 23 The July agreement stated that the parties were entering into a voluntary agreement regarding the sale or distribution of assets from the marital home. It expressly stated that wife will retain $285,000 — which was described as an inheritance from her parents — as her separate property and the remaining equity in the marital home would be split equally between husband and wife. As such, this agreement plainly explained the marital rights husband was modifying or waiving should the assets from the marital home be sold or distributed. See § 14-2-309(1)(c). Thus, the agreement was enforceable as a marital agreement under section 14-2-302. 
 11 ¶ 24 True, the July agreement didn’t have a conspicuously displayed notice of waiver of rights. But section 14-2-309(1)(c) requires either a notice of waiver of rights or a plain language explanation of the marital rights being modified or waived by the agreement; it doesn’t require both. ¶ 25 Because the plain language of the agreement evidences the parties’ intent that wife’s $285,000 gift from her parents would be treated as her own separate property should the assets from the sale of the marital home be distributed, husband waived any marital claim to that amount of equity. Thus, we affirm the district court’s order allocating to wife as her separate property $285,000 of equity from the marital home. C. Appellate Attorney Fees and Costs ¶ 26 Husband requests attorney fees under sections 13-17-102 and 14-10-119, and C.A.R. 39.1. Wife requests attorney fees under section 14-10-119 and C.A.R. 39.1 and costs under C.A.R. 39(a). Both parties object to the other’s request for appellate costs and attorney fees. 
 12 1. Section 13-17-102 ¶ 27 Husband cited section 13-17-102 in support of his request for attorney fees but didn’t provide any factual or legal basis for an award under this section. Husband’s request for attorney fees under section 13-17-102 is denied. See In re Marriage of Aldrich, 945 P.2d 1370, 1379 (Colo. 1997) (“Conclusory statements that a claim is frivolous, groundless, or vexatious are insufficient for purposes of appellate review and inadequate to satisfy the statutory requirement of specificity.”). 2. C.A.R. 39 ¶ 28 As the prevailing party on appeal, wife is entitled to appellate costs under C.A.R. 39 should the district court decide awarding costs is appropriate under the circumstances. See C.A.R. 39(a), (c); In re Marriage of Goodbinder, 119 P.3d 584, 586 (Colo. App. 2005) (noting that the district court has discretion in awarding costs unless a statute or rule specifically prohibits such award). Accordingly, we remand the determination of wife’s appellate costs, if deemed appropriate, to the district court. 
 13 3. C.A.R. 39.1 and Section 14-10-119 ¶ 29 Both parties request reasonable attorney fees under section 14-10-119, asserting that the other party has superior financial resources, and cite C.A.R. 39.1 to support their respective requests. Because the district court is better equipped to determine the factual issues regarding the parties’ current financial resources, we remand to it the issue of whether either party should be awarded reasonable attorney fees. See In re Marriage of Bochner, 2023 COA 63, ¶ 22; see also In re Marriage of Schaefer, 2022 COA 112, ¶ 37 (holding that wife’s request for award of her attorney fees associated with successful appeal of maintenance and child support awards would be considered on remand). V. Disposition ¶ 30 The judgment is affirmed. This case is remanded to the district court with directions to (1) adopt the parties’ stipulation regarding tax liabilities and enter it as a court order; (2) determine the amount of and award to wife her costs associated with this appeal, if appropriate; and (3) determine whether either party is entitled to reasonable attorney fees under section 14-10-119. JUDGE YUN and JUDGE DAVIDSON concur.