24CA1711 Peo in Interest of CBB 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1711
City and County of Denver Juvenile Court No. 23JV31028
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of C.B.B., a Child,

and Concerning S.J.A.,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Katie McLoughlin, Acting City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Gregory Lansky, Office of Respondent Parents' Counsel, Aurora, Colorado, for Appellant

¶ 1     S.J.A. (mother) appeals the juvenile court's judgment adjudicating C.B.B. (the child) dependent or neglected.  We affirm the adjudication, but we reverse the disposition and remand the case to the juvenile court for further proceedings in compliance with the Indian Child Welfare Act (ICWA) of 1978, 25 U.S.C. §§ 1901-1963, and Colorado's ICWA statute, § 19-1-126, C.R.S. 2024.

## I.     Background

¶ 2     In November 2023, the Denver Department of Human Services received a referral indicating that mother had tested positive for methamphetamine and marijuana at the time she gave birth to the child.  After an initial investigation, the Department filed a petition in dependency and neglect concerning the then-newborn child.  The Department alleged concerns about mother's substance use; lack of housing; pending criminal charges; medical conditions, which included a traumatic brain injury and uncontrolled seizures; and mental health issues, which included post-traumatic stress disorder and bipolar disorder.  The Department also noted that the child was born with Down syndrome and needed to be on oxygen.

¶ 3     The juvenile court granted temporary legal custody of the child to the Department, and the child was placed with the child's

paternal grandmother. Mother denied the allegations in the petition and requested an adjudicatory jury trial.

¶ 4 The juvenile court scheduled the jury trial for March 2024 but continued it twice at mother's request. In July 2024, mother did not appear for the jury trial, and the court converted it to a court trial after denying mother's request to appear for the jury trial virtually. At the conclusion of the trial, the court adjudicated the child dependent or neglected under section 19-3-102(1)(b), (d), and (e), C.R.S. 2024. The court later entered a dispositional order.

## II. Mother's Right to a Jury Trial

¶ 5 Mother contends that after she invoked her statutory right to a jury trial, she never voluntarily waived it. Thus, she argues that the juvenile court erred by converting the jury trial to a court trial. In the alternative, she contends that her counsel was ineffective by agreeing to proceed to a court trial. We are not persuaded.

### A. Additional Background

¶ 6 Mother requested an adjudicatory jury trial, which the juvenile court originally scheduled for March 2024. But mother did not appear on the morning of trial, and her counsel requested a continuance. The court continued the case to the afternoon and

said that if mother did not appear, it would convert the jury trial to a court trial. When mother did not appear, the court converted the case to a court trial but explained that if mother appeared on the scheduled date, she could reassert her right to a jury trial.

¶ 7 Mother appeared on the scheduled date and reasserted her right to a jury trial. The court scheduled a jury trial for three weeks later. But mother again did not appear, and her counsel moved for another continuance, explaining that mother had a seizure a few days earlier. The juvenile court granted the continuance and set the case for another pretrial conference two days later. At that conference, mother's counsel reported that mother was doing better, and the court again set a jury trial at mother's request.

¶ 8 On the morning of the third-scheduled jury trial, mother again did not appear. Mother's guardian ad litem (GAL) explained that although mother's counsel had talked to mother the night before, she had been unable to reach her that morning. The court paused the proceeding to allow mother's counsel the opportunity "to ascertain [mother's] location [and] intention of attending court."

¶ 9 The court recalled the case fifteen minutes later, and mother's counsel reported that she had spoken to mother who was

"purporting to not be doing well" and was "planning to call into court." Counsel acknowledged that it may be necessary to proceed with a court trial but asked if the court would be willing to allow mother to appear for the jury trial virtually. When the court denied that request, counsel stated, "And with that, we're in agreement with proceeding with a court trial." The court released the jury and explained that mother could appear virtually for the court trial.

¶ 10 Before trial began, mother's counsel said mother was "trying to log in" and asked if the court could call her instead. The court called mother twice with no answer and then allowed mother's GAL to step out of the courtroom to call mother. As she did so, mother's counsel told the court, "[W]e can get going." After opening statements, the court asked mother's counsel if she had "any updates in regards to reaching [mother]," and counsel said she did not. The court proceeded with trial, and mother never appeared.

## B. Jury Trial Waiver

¶ 11 Mother first contends that she did not waive her statutory right to a jury trial by failing to appear for trial. We disagree.

4

### 1. Applicable Law and Standard of Review

¶ 12　Parents have a statutory right to a jury trial at an adjudicatory hearing in a dependency and neglect case. § 19-3-202(2), C.R.S. 2024; *People in Interest of C.C.*, 2022 COA 81, ¶ 11. But a parent may expressly or impliedly waive their statutory right to a jury trial as long as the waiver is voluntary. *See C.C.*, ¶ 12. A person may waive a statutory right through "freely chosen conduct that clearly manifests an intent to relinquish the right or is inconsistent with its assertion." *People in Interest of B.H.*, 2021 CO 39, ¶ 70. Moreover, in civil cases, a jury trial is not required when "all parties demanding trial by jury fail to appear at trial." C.R.C.P. 39(a).

¶ 13　When a parent fails to appear for an adjudicatory jury trial, the juvenile court "should inquire further about the parent's whereabouts and the circumstances concerning her absence before converting a jury trial to a bench trial." *See C.C.*, ¶ 18. The court must then determine, based on that inquiry, whether the parent's actions manifest an intent to relinquish their right to a jury trial or are inconsistent with the assertion of that right. *See id.*; *B.H.*, ¶ 70.

¶ 14　The waiver of a statutory right presents a mixed question of fact and law. *See B.H.*, ¶ 50. We therefore accept the juvenile

5

court's factual findings if they are supported by the record and review the legal significance of those facts de novo. *Id.*

### 2. Analysis

¶ 15 As an initial matter, the Department and GAL contend that mother failed to preserve her jury trial claim for appeal by failing to object to the juvenile court's implied finding of waiver or to its conversion of the jury trial to a court trial. *See Forgette v. People,* 2023 CO 4, ¶ 21 (noting that "a party must present the trial court with 'an adequate opportunity to make findings of fact and conclusions of law on any issue'" before it is subject to appellate review) (citation omitted). They also assert that mother is estopped from challenging the lack of a jury trial because she expressly agreed to and participated in the court trial. *See MacGregor v. Porter,* 354 P.2d 489, 489-90 (Colo. 1960) (holding that party waived jury trial by proceeding without objection to court trial).

¶ 16 We need not decide whether mother's conduct, or that of her counsel, precludes her from challenging the lack of a jury trial on appeal. Even assuming mother's claim is not barred by lack of preservation or estoppel, we discern no error in the court's

conversion of the jury trial to a court trial because the record indicates that mother waived her statutory right to a jury trial.

¶ 17    Consistent with *C.C.*, when mother did not appear for trial (for the third time), the juvenile court asked about her "whereabouts and the circumstances concerning her absence." *C.C.*, ¶ 18. When mother's GAL explained that mother had "not been responsive," the court allowed additional time for counsel and the GAL to locate her and determine whether she intended to appear in court. After speaking with mother, counsel confirmed that mother did not plan to appear in person and was planning to call in. Counsel gave no indication that mother "would appear promptly or that she had a good reason for her tardiness," *id.*, saying only that she was "purporting not to be doing well this morning." It was only after this exchange that the court converted the jury trial to a court trial. Although the court did not make an express finding that mother waived her right to a jury trial, that finding was implicit in its decision, and the record supports it. *See In re Parental Responsibilities of S.Z.S.*, 2022 COA 105, ¶ 21 (noting that a court's finding may be implicit in its ruling); *C.C.*, ¶ 18; C.R.C.P. 39(a)(3).

¶ 18    We are not persuaded by mother's argument that C.R.C.P. 39(a)(3) does not apply to dependency and neglect cases. First, a division of this court has concluded that it does. *See People in Interest of J.R.M.*, 2023 COA 81, ¶ 9 (noting that the Colorado Rules of Civil Procedure apply to juvenile matters that are not governed by the Colorado Rules of Juvenile Procedure or the Children's Code); *see also* C.R.J.P. 1.[1] But more to the point, mother's waiver does not turn on the application of C.R.C.P. 39(a)(3). Regardless of whether that rule applies, mother's voluntary conduct of failing to appear at trial — even after being contacted by counsel — manifests an intent to relinquish her right to a jury trial or, at a minimum, is inconsistent with the assertion of that right. *See B.H.*, ¶ 70.

¶ 19    For the same reasons, we reject mother's argument that her counsel did not have the authority to waive her "personal and substantial right to a jury trial." Our conclusion is not based on

---

[1] The supreme court has adopted new Colorado Rules of Juvenile Procedure that will apply to all cases filed on or after July 1, 2025. *See* Rule Change 2025(10), Colorado Rules of Juvenile Procedure (Amended and Adopted by the Court En Banc, Apr. 21, 2025), https://perma.cc/6FC6-5S75. The new Rule 4.21(b) specifies how a respondent parent can lose the statutory right to a jury trial. *Id.* Thus, C.R.J.P. 4.21(b), rather than C.R.C.P. 39(a)(3), will apply in dependency and neglect proceedings filed after July 1, 2025.

*counsel's* waiver of mother's right to a jury trial.  It is based on *mother's* waiver of her jury trial right by failing to appear at trial.

¶ 20    Nor are we persuaded by mother's argument that, to the extent C.R.C.P. 39(a)(3) applies, her counsel's appearance was sufficient to preserve her right to a jury trial under that rule. C.R.C.P. 39(a)(3) provides that a jury trial is not required when the "parties" demanding a jury trial fail to appear.  And Colorado's Children's Code specifies that a "party" to a dependency and neglect proceeding is "[a] person named as a respondent."  § 19-3-502(5.5)(a), C.R.S. 2024.  Thus, when read together, C.R.C.P. 39(a)(3) and section 19-3-502 indicate that the focus must be on the appearance of the respondent parent, not their counsel.

¶ 21    Mother suggests for the first time in her reply brief that the court erred by denying her request to appear virtually for a jury trial.  We do not ordinarily consider arguments raised for the first time in a reply brief.  *In re Marriage of Dean*, 2017 COA 51, ¶ 31. But even if we were to consider this argument, mother does not point to any legal authority suggesting that a juvenile court *must* permit a parent to appear virtually for a jury trial or that a parent's offer to do so preserves their statutory jury trial right.  *See In re*

*Marriage of Zander*, 2019 COA 149, ¶ 27, *aff'd*, 2021 CO 12 (declining to address argument not supported by "legal authority or any meaningful analysis"). Notably, although the court did permit mother to appear virtually for the court trial, she did not do so.

¶ 22     Finally, to the extent mother challenges the court's conversion of the first two scheduled jury trial dates to bench trials when mother failed to appear for those trial dates, any error would be harmless because the court subsequently allowed mother to "reassert" her right to a jury trial and reset the case for a jury trial. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").[2]

¶ 23     Thus, because mother waived her right to a jury trial by failing to appear on the day of trial, the juvenile court did not err by converting the jury trial to a court trial.

---

[2] The Department and the GAL assert that mother was not entitled to reassert her jury trial right after waiving it by failing to appear for the first scheduled jury trial. Because we conclude that mother waived her right by failing to appear for the third scheduled jury trial date, we need not address this argument.

10

## C.     Ineffective Assistance of Counsel

¶ 24     Mother also argues, in the alternative, that her counsel provided ineffective assistance by (1) not requesting the court to make the requisite inquiry under *C.C.* and (2) agreeing to proceed with a court trial in mother's absence.  We again disagree.

### 1.     Applicable Law

¶ 25     A parent has a statutory right to the effective assistance of counsel in dependency and neglect proceedings.  §§ 19-1-105(2), 19-3-202(1), C.R.S. 2024; *A.R. v. D.R.*, 2020 CO 10, ¶ 47.  A party can raise a claim of ineffective assistance of counsel in a dependency and neglect proceeding for the first time on appeal. *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

¶ 26     To establish a claim of ineffective assistance of counsel, a parent must show that (1) "counsel's performance was outside the wide range of professionally competent assistance," and (2) "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *A.R.*, ¶¶ 48, 60; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).  If the parent fails to establish either prong of this test, the claim fails.  *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 27    Applying this test, we must remand the case for further factual findings only if the parent's allegations are "sufficiently specific to constitute a prima facie showing of ineffective assistance of counsel." *A.R.*, ¶ 63.  If the allegations lack sufficient specificity or do not meet this standard, we may summarily deny the claim.  *Id.*

### 2.    Analysis

¶ 28    Mother first argues that her counsel's performance was deficient because counsel did not ask the juvenile court to make additional inquiries about mother's whereabouts, as required by *C.C.*  But as we have explained above, the court made the proper inquiry and allowed mother's counsel additional time to investigate. Mother's counsel's response made clear that mother did not plan to appear in person, and mother does not assert otherwise on appeal. There was thus no further inquiry for mother's counsel to request.

¶ 29    Mother also argues that her counsel invited any error in the conversion of her jury trial to a court trial by agreeing to proceed with the court trial.  But as discussed above, mother's counsel did not waive mother's right to a jury trial; mother waived it by failing to appear.  And once she had done so, mother's counsel had no ground to object to the conversion of the jury trial to a court trial.

¶ 30    Moreover, mother does not claim that counsel agreed to proceed with the court trial without her consent or failed to advise her of the consequences of her failure to appear. And nothing in the record suggests that counsel acted against mother's wishes. To the contrary, the record indicates that counsel had spoken to mother immediately before telling the court that "we're at the point where we understand if we need to proceed with a court trial" and "with [the denial of the request to appear for a jury trial virtually], we're in agreement with proceeding with a court trial." *See* Colo. RPC 1.2(a) (providing that "a lawyer shall abide by the client's decisions concerning the objectives of the representation and . . . consult with the client as to the means by which they are to be pursued," and "may take such action on behalf of the client as is impliedly authorized to carry out the representation").

¶ 31    Thus, because mother has not made sufficient allegations to constitute a prima facie showing that her counsel's performance was deficient, we deny her claim. *See A.R.,* ¶ 63; *C.B.,* ¶ 26.

### III.    Judicial Notice

¶ 32    Mother also contends that the juvenile court erred by taking judicial notice of its personal observations of mother's functioning

13

and emotional dysregulation, the fact that it had to continue the trial several times, and the fact that it had to appoint a GAL for mother. Mother asserts that the court improperly relied on these judicially noticed facts to adjudicate the child dependent or neglected. She also argues that this error created an appearance of bias, deprived her of fundamentally fair proceedings, and constituted a miscarriage of justice. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 33 A court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute and is either (1) generally known within the territorial jurisdiction of the court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. CRE 201(b). A court may also take judicial notice of its own records. *In Interest of C.A.B.L.*, 221 P.3d 433, 442 (Colo. App. 2009). But a court may not take judicial notice of facts on the issue the parties are litigating. *Id.* Judicial notice must be exercised "cautiously because its purpose is to bypass the usual factfinding process." *Quintana v. City of Westminster,* 56 P.3d 1193, 1199 (Colo. App. 2002).

¶ 34    We review the juvenile court's decision to take judicial notice for an abuse of discretion. *Id.* A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *People in Interest of E.R.*, 2018 COA 58, ¶ 6.

## B.    Analysis

¶ 35    Mother did not preserve her judicial notice argument for appeal. When a court takes judicial notice without prior notification, a party may request "an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." CRE 201(e). Yet, after the juvenile court said it was taking judicial notice of certain of its observations, mother did not object or otherwise challenge the propriety of that judicial notice. We generally will not address arguments raised for the first time on appeal. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14.

¶ 36    In any event, even if we were to address mother's argument, we discern no reversible error. The Department presented ample evidence at the adjudicatory trial that mother's emotional dysregulation and medical conditions hindered her ability to care for the child or meet the child's needs. That evidence independently supported the court's finding that the child was dependent or

15

neglected, wholly apart from any judicially noticed facts. Thus, any error in the court's decision to take judicial notice of its own observations of mother's challenges was harmless. *See* C.A.R. 35(c); *People in Interest of R.J.*, 2019 COA 109, ¶ 22 (holding that an error does not affect a substantial right unless it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself).

¶ 37 To the extent mother argues that the juvenile court's decision to take judicial notice created an appearance of bias or impropriety, that argument is undeveloped. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address undeveloped argument). We may not question the reliability of the result of a proceeding unless the judge was "actually biased." *People in Interest of A.P.*, 2022 CO 24, ¶ 29. To show actual bias, the record must "clearly demonstrate" that the judge had a "substantial bent of mind" against a party. *Id.* at ¶ 30 (citation omitted). Bare assertions and speculative statements do not meet this burden. *Id.*

¶ 38 In her opening brief, mother asserts only that the court's decision to take judicial notice "created an *appearance* of partiality and bias, a substantial *appearance* [of] impropriety, and made [the

16

court] a witness to the proceeding." (Emphasis added.) But mother does not contend that the judge was "actually biased" against her, much less point to anything in the record that "clearly demonstrate[s]" such bias. *Id.* at ¶¶ 29-30. She thus provides no legal basis for setting aside the adjudication. *See id.* at ¶¶ 39-40.

¶ 39 Finally, mother contends that the court's decision to take judicial notice deprived her of fundamentally fair proceedings, violated her due process rights, and constituted a miscarriage of justice. This argument fails because we have already concluded that any error was harmless. *See People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007) ("A parent may not obtain relief on a due process claim absent a showing of harm or prejudice.").

## IV. ICWA

¶ 40 Mother also contends that the juvenile court did not comply with ICWA and Colorado's ICWA statute by failing to direct the Department to exercise due diligence in determining whether there is reason to know that the child is an Indian child. We agree.

### A. Applicable Law

¶ 41 ICWA applies when a dependency and neglect proceeding involves an "Indian child." *See People in Interest of A.G.-G.*, 899

P.2d 319, 321 (Colo. App. 1995). "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); *see also* § 19-1-103(83), C.R.S. 2024.

¶ 42    In any emergency, voluntary, or involuntary child-custody proceeding, the juvenile court must ask the parties on the record whether they know or have reason to know that the child is an Indian child. § 19-1-126(1)(a)(I)(A). A dispositional hearing is a child-custody proceeding under ICWA. *People in Interest of M.V.,* 2018 COA 163, ¶ 42, *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.,* 2022 CO 42. Thus, a juvenile court must make an ICWA inquiry at the dispositional hearing.[3]

¶ 43    A mere assertion of a child's Indian heritage does not alone give the juvenile court reason to know that a child is an Indian child. *E.A.M.,* ¶ 56. But if the court receives information that the child may have Indian heritage, it must direct the Department to

---

[3] An adjudicatory trial is not a child-custody proceeding. *People in Interest of M.V.,* 2018 COA 163, ¶¶ 35-36, *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.,* 2022 CO 42.

"exercise due diligence in gathering additional information that would assist the court in determining whether there is reason to know that the child is an Indian child." § 19-1-126(3); *see also H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.

### B.     Analysis

¶ 44     At the initial shelter hearing, mother reported having Seminole and Cherokee heritage.  Mother later filed a family ancestry chart, which again reported that she had Seminole and Cherokee heritage but explained that she did not know "specifics of who in her family was enrolled" in a tribe.  Thus, at a minimum, the court "receive[d] information that the child may have Indian heritage." § 19-1-126(3).  The court was therefore required to direct the Department to exercise due diligence.  *Id.*; *see also H.J.B.*, ¶ 5 (holding that "generalized assertions of Indian heritage, without more, trigger the due diligence requirement" under section 19-1-126(3)).

¶ 45     Nothing in the record indicates that the court did so.  Nor did the court make any findings concerning the Department's efforts to gather more information about mother's reported Indian heritage and whether there was reason to know the child is an Indian child.  *See H.J.B.*, ¶ 59 (explaining that juvenile court "must determine

19

(1) whether the petitioning party satisfied its statutory due diligence requirements and (2) whether the court now has reason to know that the child is an Indian child"). Although the court did inquire about ICWA at the initial shelter hearing, it made no ICWA inquiry or findings at the dispositional hearing. *See* § 19-1-126(1)(a)(I)(A).

¶ 46    We therefore reverse the dispositional order and remand the case to the juvenile court. *See M.V.*, ¶ 47. On remand, the juvenile court should first ask mother whether she knows or has reason to know that the child is an Indian child. § 19-1-126(1)(a)(I)(A). If mother maintains that she has Seminole and Cherokee heritage and does not know which family members are enrolled or eligible for membership in a tribe, the court should direct the Department to exercise due diligence under section 19-1-126(3). *See H.J.B.*, ¶¶ 57-59 (describing actions that a petitioning party should take to satisfy section 19-1-126(3)). If, after making the proper inquiries and considering any information the Department discovers through its due diligence, the court has reason to know that the child is an Indian child, it must direct the Department to send notices to applicable tribes and treat the child as an Indian child unless and

until the court determines on the record that the child does not meet the definition of an Indian child. *See* § 19-1-126(1)(b), (2).

## V.    Disposition

¶ 47    The adjudication is affirmed, the disposition is reversed, and the case is remanded for further ICWA determinations.

JUDGE FREYRE and JUDGE SULLIVAN concur.