No. 20260.

ROSEMARY KALCEVIC *v.* FRANK FRED KALCEVIC, ET AL.
(397 P.2d 483)

Decided December 14, 1964.    Rehearing denied January 4, 1965.

EDISON and BERMAN, for plaintiff in error.

GRANT, SHAFROTH, TOLL & McHENDRIE, PETER J. CROUSE, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS writ of error primarily concerns the question as to whether a certain asset of the husband must be considered by the trial court in arriving at a property settlement division in a divorce action.

The parties involved, all of whom appear here, are: Rosemary Kalcevic, plaintiff in error, wife of Frank Fred Kalcevic; and as defendants in error, Frank's father Henry, an elderly, ill man of 80 winters at the time this controversy ripened; Frank's two brothers Joseph T. Kalcevic and John G. Kalcevic; and, a family farm corporation owned equally by the three brothers who contributed services, and to which two of them had contributed farm machinery and some land, and to which their father had made certain contributions.

Rosemary was first represented by other counsel who withdrew and her present attorneys (less another one who subsequently also withdrew) have litigated the matter since then through approximately 10 days of contested hearings, making 3516 folios of record. There have also been numerous exhibits, motions and other pleadings to contend with.

The record discloses that Rosemary and Frank were married on January 16, 1939. Two children, emancipated at the time of the final divorce decree, were born as issue of the union. The marriage terminated in an uncontested divorce on October 15, 1959, after certain temporary support orders had been entered in 1958. The hearing on the divorce began May 1, 1959, and was followed by testimony relating to a property settlement. The latter hearing was then continued to May 8th. Rosemary's first counsel withdrew on June 22nd and

after some other procedures, not essential to this decision, the decree was entered on October 15th, as above mentioned. Jurisdiction, on October 15, 1959, was then retained by the trial court over matters pertaining to property division, alimony, support (for the then minor children), court costs, attorney's fees and various financial obligations of the parties. By January 17, 1962, a decision on the matters left at issue was arrived at and the trial court entered its written "Findings of Fact, Conclusions of Law and Judgment."

The gist of the final decree was that Rosemary was awarded the cash sum of $12,500.00 which was what the court deemed to be one-half the value of the farm machinery contributed by her husband in 1952 to Kalcevic Farms, Inc.; the right to live for life or until remarriage in a home purchased and owned by the corporation (the original cost of which was $24,000.00); that the corporation pay the taxes and insurance on the house during her terminable life estate; and, that Frank pay certain additional attorneys' fees.

Both plaintiff in error and defendants in error find fault with the final decree. Rosemary objects because, in essence, she contends the evidence was that she had worked through the years, often deprived of the barest of necessities and modern conveniences, to help her husband and his family in what the record reveals was a somewhat communal and truly frugal existence; that Henry Kalcevic not only had given the proceeds of the "home farm" or the farm itself to his sons when they set up their corporation in 1952, but also had promised to convey another farm to his sons, due to the sons' family labors, which transfer did not materialize due to this divorce action; that the actual value of the corporation lands at the time of the property hearing, according to her expert witnesses, was $655,900.00 using the market value method, or $654,850.00 using the income method, and that even defendants in error's realty expert estimated the lands to be worth $444,000.00; that

with certain adjustments (even excluding father Henry Kalcevic's later owned farm) there is a minimum land value of $300,000.00 involved. Further, she contends, that when other assets are included, using the $300,000.00 land figure, there is a total value of $488,500.00.

Rosemary urges that she was entitled to have the trial court pierce the corporate veil and value all her husband's assets as a one-third interest in the net value of the corporation's assets. Also, that if his stock is so valued she is entitled to "a sum in the order of $100,000.00," which we assume is one-half of Frank's net paper worth if no corporation existed and the same assets were owned by the three brothers in a partnership or joint venture. She further urges that the value of the father's remaining lands should be included in the computation because of the testimony of some witnesses that he intended to give these to his sons at some future date; and, that in any event, the sons had worked such lands and were entitled to them. Further, she contends that the trial court committed error in hearing any evidence as to a property settlement before the actual divorce decree was entered. The alleged paucity of her present counsels' fees and several other matters, unnecessary to a decision here, are also asserted. No complaint is made of the award to her of $200.00 per month permanent alimony.

Frank's assigned pertinent cross errors include a dissatisfaction with the decree because:

(1) He alleges the record does not support any finding that Rosemary helped accumulate the farm machinery that her husband had turned into the family corporation for stock; thus, the court abused its discretion in awarding her any sum based on such value;

(2) He asserts the court could not pierce the corporate veil and award Rosemary a life estate in the house owned by the corporation, even though she and her husband had lived there for several years, with the corpo-

ration furnishing food and even clothing to them over certain periods of time before the divorce; and,

(3) He believes the award to Rosemary is excessive and should be set aside since she allegedly did not contribute to her husband's estate.

Frank also disputes the assertion that Rosemary's attorneys were paid in a niggardly fashion; disputes the other issues raised by her; points out that his expert witness valued his stock at only $40,000.00; and asserts that the corporate assets have only a net value of $273,055.95, with Frank's net worth being $70,178.65 (after allowing for sums owed his brothers) in addition to his owning an automobile and some furniture.

First we turn to the evidence before the trial court. Here we find a picture of what was in fact a family enterprise. The corporate shell, known as Kalcevic Farms, Inc., being a means by which the communal property of the three brothers was held and as a legal device to receive assets from them and gifts from their father; further, at least one wife, i.e. Rosemary, through the years contributed her labors as housekeeper, and sometimes as farm cook and in non-domestic labor, to the retention of the entire Kalcevic family assets. It is true that Frank and his brothers had worked for their father, beginning as young boys without receiving cash pay. And, even after their marriage, Frank and Rosemary apparently had worked for varying periods only for groceries, inadequate clothing and sometimes poor accommodations. The communal effort resulted in Henry's initial lands being held and later sold at a large profit. It is clear that the current assets of the corporation came about as a result of this joint family effort. It also appears that father Henry Kalcevic's idea of patriarchal control is what kept most of the disputed assets undissipated, first as to his farm, and then as to the new corporate properties.

In the instant case the learned trial court, apparently,

was willing to pierce the corporate veil to give Rosemary a life estate in what was nominally a corporate owned house. It was unwilling, however, to extend its judicial inquiry and consideration in the corporation to value its other assets for the purpose of effecting a just division of the Frank Kalcevic family assets. In both these instances it was in error.

■ Justice requires that the joint accumulations of a husband and wife, or property which was acquired during marriage or added to through the joint efforts of both spouses, should be considered for equitable division on termination of the marriage. A problem here is on what date should the assets be valued? The applicable rule is that they must be valued at the time of the decree. *Traynor v. Traynor,* 146 Colo. 70, 360 P.2d 431 (1961). Also see *Brigham v. Brigham,* 141 Colo. 41, 346 P.2d 302-03 (1959) and *Nunemacher v. Nunemacher,* 132 Colo. 300, 287 P.2d 662 (1955) for rules pertaining to the discretion of the trial court in these matters.

■ Frank's principal asset at the date this decree was entered was not farm machinery (for he had years before transferred that to the family corporation for stock) but one-third of the stock in Kalcevic Farms, Inc., which company had valuable lands as well as machinery and other assets. Thus, the corporate veil could and should have been pierced all the way to determine the fair and reasonable value of Frank's stock.

■ This record fails to disclose that there was any enforceable contract, nor was there any constructive trust proved, which would entitle Rosemary to have Henry Kalcevic's later personally held lands transferred to the family corporation or to be counted among its assets. Henry paid the taxes on his own lands and exercised other indicia of ownership over them. The record shows that his sons merely farmed his lands for him for a certain consideration. No gift can be forced from such a prospective donor, and no constructive trust arises as a

result of his past actions and his statements of future intent, resolved here against Roesmary by the trier of fact. Even if Henry had expressed the thought, as he was shown to have done, that some day his sons would receive his remaining real property, that does not now give birth to any enforceable right in either Rosemary or the Kalcevic brothers.

As to whether the trial court improperly heard evidence on the parties' property settlement before the entry of the divorce decree, we hold that no error occurred. C.R.S. '53, 46-1-5 (2), in effect at the time of the hearing in question, does not prohibit such a *hearing* but merely provides that at the time of the issuance of the divorce decree, or thereafter, on application "the court may make such *orders,* if any, \* \* \*" relating to property divisions as may be fair and equitable. (Emphasis supplied.) A *hearing* is not to be equated with an *order.* Counsel's citations of *McCoy v. McCoy,* 139 Colo. 105, 336 P.2d 302 (1959) and *Stephenson v. Stephenson,* 134 Colo. 96, 299 P.2d 1095 (1956) have no application to this factual situation. The *McCoy* case is inapplicable because it was decided under a prior statute; the *Stephenson* case is not in point.

The attorneys' fees awarded here were undoubtedly based upon the trial court's belief that the value of Frank's assets did not include the actual value of his interest in Kalcevic Farms, Inc. Such counsel fees must be fair and reasonable, and attorneys are entitled to a hearing thereon under normal circumstances. The initial determination thereof, however, is solely within the province of the trial court and will not be disturbed on review unless a clear abuse of discretion is shown— which has not been done here at this time. Upon a retrial of the issue of corporate stock value, a hearing should be held to determine the reasonableness of the award of attorneys' fees for past services. In addition, a hearing should be held to determine whether newly

rendered services have resultantly added additional values to Rosemary's position; and if so, a suitable and fair additional award should be made on account thereof.

■ From what has heretofore been said, Frank's cross assignments of error must fail with one exception, because the overall award to Rosemary was not excessive and the real question is whether it was enough. The exception is whether the assignment as error of that part of the judgment granting the wife a lifetime estate in the residential property (Rosemary and Frank's home) owned by the Kalcevic Farms, Inc., was correct.

In the instant case Frank is the owner of a minority stock interest and is not the owner of the home in question. Piercing the corporate veil to determine the true value of an interest in a closely held corporation is one thing. To order that part of the corporation's property shall be distributed to or used by a legal stranger is something else. As far as ownership goes, Rosemary is not entitled to corporate assets. What she is entitled to is a sum of money, or possibly even shares of stock, based upon the fair value of her husband's interest.

■ We note that the $40,000.00 valuation of the stock made by Frank's expert broker-witness, for a minority stock interest in the closely held family corporation, might not be unfair under certain circumstances. Here, however, it should not be the measure of value in dividing family assets where the corporation is the alter ego of three operating brothers and the total corporate net asset value is so disproportionately higher than the appraised stock value.

All other assigned errors and cross errors we find to be of no materiality here.

The judgment is reversed with directions to the trial court to determine the fair net value of Frank's assets including his interest in Kalcevic Farms, Inc.; to determine a proper and fair division of property between Frank and Rosemary and reasonable attorneys' fees, all

in accordance with the views expressed herein; and, to grant such other and further relief as may be necessary to do equity between the parties.

It is so ordered.

MR. JUSTICE MOORE and MR. JUSTICE PRINGLE concur.