In re the **MARRIAGE OF Mary E. SCHMEDEMAN, Appellee,**

and

**Danny D. Schmedeman, Appellant.**

No. 06CA0550.

Colorado Court of Appeals, Div. II.

Feb. 21, 2008.

Rehearing Denied July 3, 2008.

Law Office of Lori J. Crystal, Lori J. Crystal, Castle Rock, Colorado, for Appellee.

Law Office of Kelly A–R McCurley, Kelly A–R McCurley, Monument, Colorado, for Appellant.

Opinion by Judge FURMAN.

The trial court divided marital property and awarded child support as part of the permanent orders in this action to dissolve the marriage between Danny D. Schmedeman (husband) and Mary E. Schmedeman (wife).

Husband appeals. He contends the trial court erred in (1) classifying a log cabin owned by his parents as marital property and dividing part of its value between husband and wife; (2) dividing the parties' assets inequitably; (3) refusing to offset the loan on his vehicle against its value; and (4) refusing to modify child support retroactively. Husband further contends the judge was biased against him. Wife requests an award of her attorney fees on appeal. We affirm in part, reverse in part, and remand for further proceedings.

## I.  Log Cabin

Husband first contends the trial court erred in classifying a log cabin owned by his parents as marital property and dividing part of its value between husband and wife. We agree.

### A.  Factual Background

In 1995, husband acquired some old utility poles and cut them into logs for a cabin. With the help of his father, his business partner, and some of his friends, husband and wife built the shell of a log cabin on property near their home in Kansas.

Husband subsequently gave the cabin shell to his parents, who installed it on leased land. His parents contributed about $65,000 in materials to finish the construction of the cabin, and paid the utilities. Because title was in their name, they also paid the property insurance and taxes on an ongoing basis. Husband's sister also contributed about $9,000 in materials for the cabin.

In 1999, husband's business partner sued husband and wife in Kansas, claiming an interest in the logs husband had conveyed to his parents. During this proceeding, husband stated, "[T]he cabin was never referred to as anything but my cabin." The court in that action valued the cabin in its previous unfinished state at less than $24,000.

After the cabin was completed, all family members used it as a vacation home when they wished. At least once, husband's parents discussed the possibility of bequeathing the cabin to husband and wife. Husband also featured the cabin in advertisements for his business and used it as a model to solicit building jobs.

During the dissolution of marriage proceedings, when the issue of the cabin was raised, the trial court initially found that the logs were acquired during the marriage, and that husband would have to establish that both he and wife intended to give the cabin to his parents as a gift.

Husband's father testified that his son's labor was a gift to his parents, and that he planned that all his children, including husband, would inherit the cabin. After hearing the testimony of the witnesses, the trial court found:

> [C]learly, there was an intent by Mr. Schmedeman, Senior to gift the cabin to the husband and the wife. Clearly, there was an intent reflected in a number of the letters and documents that had been accepted by this Court from [husband] to [wife] that [wife] would benefit from this cabin and just as clearly in this case the evidence reflects that [wife] never consented in any way, shape or form to the gifting

of this cabin to ... Mr. Schmedeman's parents. She always was unhappy with it, she always objected and was concerned that there be some sort of guarantee that they would benefit from that proposition.

The trial court valued the finished cabin at $250,000 and determined that part of that value constituted marital property. The court stated:

[The] cabin is marital except for the sixty-five thousand paid by husband's parents.... [T]he Court finds that the husband and wife and his parents all owned shares of the cabin. And the Court finds that the marital portion of the, or the marital value of the cabin is one-hundred and twelve-thousand dollars, and one-hundred and twelve-five-hundred. And the Court finds therefore, that the wife's share, if she had that asset to receive in this dissolution of marriage, would be fifty-six-thousand-two-hundred and fifty dollars.... [W]hat the Court has done is simply put the one-hundred and twelve-thousand-five hundred on the husband's side of the ledger and that is the amount that will be offset in this case as his asset.

## B. Legal Analysis

Husband contends (1) wife's objection to him giving the log cabin to his parents; and (2) his father's intent to bequeath the cabin back to him did not warrant the trial court's classifying the cabin as marital property. We agree.

The disposition of marital property is governed by the Uniform Dissolution of Marriage Act (the Act), sections 14–10–101 to – 113, C.R.S.2007. Under section 14–10–113, the trial court must make an equitable distribution of marital property after considering all relevant factors. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo.2001). However, the court must first determine (1) whether an interest constitutes "property" and if so (2) whether that property should be classified as marital or separate. *Id.*

A trial court has great latitude to effect an equitable distribution of property based on the facts and circumstances of each case, and we will not disturb its decision absent a clear abuse of discretion. *Id.* Determining the value of marital property and the sufficiency and credibility of the evidence are within the trial court's discretion and such determinations may not be disturbed unless they are unsupported by the record. *In re Marriage of Antuna,* 8 P.3d 589, 593 (Colo.App.2000).

### 1. Disposing of Marital Property During a Marriage

■ Husband first contends he gave the logs and cabin shell to his parents during the marriage, and wife's objection to his doing so did not preserve her right to have this property classified as "marital property" under the Act. We agree.

Husband presents a question of statutory interpretation which we review de novo. We construe a statute so as to give effect to the General Assembly's intent and its chosen legislative scheme. We look first to the plain language of the statute, and if that language is clear and unambiguous on its face, we apply the statute as written. *In re Marriage of Chalat,* 112 P.3d 47, 54 (Colo.2005).

Section 14–10–113(1), C.R.S.2007, is clear and unambiguous. It provides in pertinent part that "*[i]n a proceeding for dissolution of marriage ... the court ... shall set apart to each spouse his or her property and shall divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors.*" (emphasis added).

Section 14–10–113(2), C.R.S.2007, defines "marital property" as "all property acquired by either spouse subsequent to the marriage" unless the property falls within the listed exceptions, such as property acquired "by gift, bequest, devise, or descent." *See* § 14–10–113(2)(a)–(d), C.R.S.2007.

These provisions are based on the former section 307 of the Uniform Marriage and Divorce Act (Uniform Act). Therefore, we may look to the Uniform Act and cases that have interpreted the Uniform Act for guidance. *See Balanson,* 25 P.3d at 35 (because the issue is one of first impression we may look to other states that have addressed this issue); *see also* § 14–10–104(1), C.R.S.2007 ("This article shall be so applied and con-

strued as to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact it.").

In *Kujawinski v. Kujawinski,* 71 Ill.2d 563, 17 Ill.Dec. 801, 376 N.E.2d 1382 (1978), the plaintiff alleged the Uniform Act was unconstitutional because it effectively conveyed a partnership to a spouse who had no interest in certain property acquired prior to the Act's enactment. The Illinois Supreme Court disagreed, and concluded that the Uniform Act does not regulate the interests of spouses during the marriage.

> The explanatory note accompanying [section 307 of the Uniform Act] clearly establishes its limited function. It resolves that "marital property" is defined "only for the purposes of division on dissolution of marriage or legal separation. No attempt is made to regulate the respective interests of the spouses in property during the existence of the marriage." ([Uniform Act] (U.L.A.) sec. 307, Commissioners' Note, at 492 (1973).).... The term "marital property" is a nomenclature devised to realize an equitable distribution of property upon termination of the marriage. Operation of the term "marital property" under the [Uniform] Act is not triggered until the time of dissolution.

*Id.* at 572–73, 17 Ill.Dec. 801, 376 N.E.2d at 1386; *see also In re Questions Submitted by United States District Court,* 184 Colo. 1, 8, 517 P.2d 1331, 1334–35 (1974); *United States v. 9844 South Titan Court,* 75 F.3d 1470, 1476–77 (10th Cir.1996) (under Colorado law, a spouse's right to the other spouse's property does not vest until death or divorce, and until then the person may dispose of his or her property in any manner), *overruled in part on other grounds by United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *LaParle v. State,* 957 P.2d 330, 334 (Alaska Ct.App.1998)(each spouse normally has wide-ranging authority to use or dispose of property).

It is undisputed that during their marriage, husband and wife owned the logs and the original log cabin shell. Thus, during that time husband could dispose of the logs and the original log cabin shell as he saw fit,

and wife's disapproval did not affect the validity of his transfer of this property. *See Kalcevic v. Kalcevic,* 156 Colo. 151, 157, 397 P.2d 483, 486 (1964)(tractor that had been transferred to family corporation years before could not still be valued as marital property). Moreover, there was no evidence husband gave away the property in contemplation of dissolution of marriage. *In re Marriage of Lockwood,* 971 P.2d 264, 267 (Colo.App.1998)(if marital property no longer exists and has not been dissipated, it cannot be valued).

Wife alternatively contends that husband's claim that he gave his parents the cabin is contradicted by husband's representations during the Kansas lawsuit that the cabin was his property, his featuring the cabin in advertisements for his business, and his use of it as a model to solicit business. However, husband's father testified, without contradiction, that he held title to the cabin. The trial court found this testimony credible. *See Wood v. Wood,* 284 Ill.App.3d 718, 723, 219 Ill.Dec. 877, 672 N.E.2d 385, 389 (1996)(the fact that spouse represented that the property will be marital does not deprive that spouse of the power to dispose of that property during the marriage as he or she sees fit). Moreover, we assume the trial court considered the value of husband's use of the cabin when it valued husband's business. *See Balanson,* 25 P.3d at 35.

Therefore, we conclude wife's objection to husband's giving the logs and the cabin shell to his parents during the marriage did not preserve her right to have this property classified as "marital property" under the Act.

### 2. Gift from Father

■ Husband next contends his father's intent to bequeath the cabin to him does not prove his father had gifted his ownership interest in the cabin back to husband and wife. Again, we agree.

"To qualify as a gift, a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift. That determination hinges fundamentally on the intent and acts of the donor and recipient, which, in turn, are ques-

tions of fact for the trial court to resolve." *In re Marriage of Dale,* 87 P.3d 219, 227 (Colo.App.2003) (citation omitted).

Although the trial court found that husband's father intended to bequeath the cabin to husband and wife, there was no evidence that husband's father actually transferred any portion of the property. *See Kalcevic,* 156 Colo. at 157–58, 397 P.2d at 487 (although father had stated intent to give his personally held lands, on which he paid taxes and exercised other indicia of ownership, to his sons at some future date, the land had not been transferred, and son had no enforceable right that could be considered a marital asset); *see also* § 14–10–113(2), C.R.S.2007.

Additionally, we conclude the trial court erred in considering the father's oral promise to bequeath the cabin to husband for two reasons. First, a marital asset may not include any interest in a donative third-party instrument that is amendable or revocable, such as a will. § 14–10–113(7)(b), C.R.S.2007. Second, although parties may contract for a will if the contract is supported by consideration, a contract to devise land falls within the statute of frauds, and must be in writing. Thus, the father's oral promise to devise land was void and unenforceable. *Ward v. Ward,* 94 Colo. 275, 280, 30 P.2d 853, 855 (1934); *In re Estate of Haywood,* 43 Colo.App. 127, 130, 599 P.2d 976, 978 (1979).

Accordingly, we conclude the trial court erred in classifying the log cabin owned by husband's parents as marital property and dividing part of its value between husband and wife.

## II. Division of Assets

Husband next contends the property division was inequitable because wife's share included more cash assets and his share comprised more retirement assets subject to tax consequences. We remand for the trial court to reconsider the property division.

■ A division of property must be equitable, not necessarily equal. *Antuna,* 8 P.3d at 594; *see Balanson,* 25 P.3d at 35.

The trial court divided the marital estate equally between the parties. However, be-

cause we have concluded the cabin should not have been considered a marital asset, the trial court must reconsider its division of the marital property. *See Balanson,* 25 P.3d at 35 (if a trial court's error in dividing marital property affects the substantial rights of the parties, we must remand the issue of property division to the trial court).

## III. Vehicle Loan

Husband next contends the trial court erred by refusing to offset the loan on his vehicle against its value. We disagree.

After the parties separated, and before the final decree, husband purchased a used truck. Although husband testified that the loan balance against this vehicle was $14,000, he did not submit the loan statement into evidence. However, the trial court did not have to accept husband's testimony regarding the loan value in lieu of documentary evidence. *See In re Marriage of Zisch,* 967 P.2d 199, 203 (Colo.App.1998)(trial court as a finder of fact can believe all, part, or none of a witness's testimony even if it is uncontroverted).

Thus, we conclude the trial court did not err by refusing to offset the loan on his vehicle against its value.

## IV. Child Support

■ Husband next contends the trial court erred by refusing to modify his temporary child support obligation as of the date his oldest child turned nineteen. We disagree.

Husband presents a question of statutory interpretation which we review de novo. *Chalat,* 112 P.3d at 54.

■ Generally, a modification of child support is effective as of the date of filing of a motion to modify. § 14–10–122(1)(a) & (d), C.R.S.2007; *In re Marriage of Emerson,* 77 P.3d 923, 924–25 (Colo.App.2003). However, former section 14–10–115(1.6), applicable to husband's motion, provides that, subject to exceptions not relevant here, "[f]or child support orders entered on or after July 1, 1997 … emancipation occurs and child support terminates *without either party filing a motion* when the child attains nineteen years of

age." Ch. 17, sec. 1, 2005 Colo. Sess. Laws 80 (emphasis added).

Husband filed a motion to modify child support on November 30, 2005, and the court modified his support obligation as of December 1, 2005. However, the court concluded it had no authority to enter a retroactive modification where, as here, the obligation included support for other children in the family. The court reasoned:

> There are some states that specifically have a per child amount for [their] child support. Colorado is not one of them. Colorado has an amount and when a child emancipates, you have to file a motion to modify for the younger children, otherwise, the amount continues.

As noted, former section 14–10–115(1.6) provides that child support terminates automatically when "the child" reaches nineteen years of age. Therefore, under that statute, the emancipation of one child does not automatically affect the obligation of a parent to pay for the full amount of child support. It is the parent's burden to show that a reduction is justified. *Taylor v. Taylor,* 147 Colo. 140, 145, 362 P.2d 1027, 1029 (1961).

Because the statute includes no authority to modify child support without the filing of a motion, the trial court correctly ruled that only an outright termination of the support obligation affecting all children is permitted without a motion.

In August 2006, after the permanent orders hearing in this case, section 14–10–115(1.6) was amended and renumbered and now reads: "[E]mancipation occurs and child support terminates *without either party filing a motion when the last or only child attains nineteen years of age* ...." § 14–10–115(13)(a), C.R.S.2007 (emphasis added). The amendment thus provides that a motion is unnecessary, as long as the support obligation applies only to the "last or only" child.

We therefore conclude the trial court did not err in modifying husband's support obligation as of the date his motion was filed.

## V. Bias

Husband also contends the trial court was biased against him and his counsel. He relies on the court's initial findings regarding the cabin and argues that they show it had predetermined the cabin's classification as a marital asset. We disagree.

The court did not limit husband's evidence regarding the cabin, and it considered the evidence and legal arguments on that issue. *See Hoang v. Monterra Homes (Powderhorn) LLC,* 129 P.3d 1028, 1034 (Colo.App. 2005) (where court placed no limitation on the presentation of evidence and its findings and conclusions indicated that it had considered the evidence and legal arguments, its early comments did not establish that it had prejudged matter), *rev'd on other grounds,* 149 P.3d 798 (Colo.2007). Moreover, husband failed to file a motion to recuse the court under C.R.C.P. 97.

Therefore, we conclude the record fails to substantiate his claims of bias.

## VI. Attorney Fees and Costs on Appeal

We conclude husband's appeal was neither frivolous nor groundless. Therefore, we deny wife's request for an award of attorney fees and costs under C.A.R. 38(d).

The judgment is reversed as to the property division, and the case is remanded for further proceedings consistent with the views expressed in this opinion. The judgment is affirmed in all other respects.

Judge ROTHENBERG and Judge J. JONES concur.