24CA0162 Marriage of Martinez 01-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0162
Pueblo County District Court No. 22DR30157
Honorable Michelle Chostner, Judge

In re the Marriage of

Alonso J. Martinez,

Appellant,

and

Theresa A. Martinez,

Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Tow and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

Barrow Brown Carrington, PLLC, Dorothy Walsh Ripka, Denver, Colorado, for
Appellant

Law Office of Dailey & Pratt, LLC, Joel M. Pratt, Colorado Springs, Colorado, for
Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 In this dissolution of marriage case between Alonso J. Martinez (husband) and Theresa A. Martinez (wife), husband appeals the district court's judgment that divided their marital estate, determined maintenance, and declined his request for attorney fees and costs. We affirm.

## I. Permanent Orders

¶ 2 The parties were married for twenty-two years. In 2023, the district court dissolved the marriage and entered permanent orders.

¶ 3 In doing so, the court divided the parties' $620,000 marital estate by allocating to husband about $340,000 of the marital equity and wife the remaining $280,000.[1]

|  | Wife | Husband |
|---|---|---|
| Marital Home | $186,459 | $186,459 |
| Reimbursement for Joint Account Withdrawal | $0 | $9,500 |
| Vehicles | $11,013 | $36,466 |
| Bank Accounts | $5,949 | $2,119 |
| Personal Property | $0 | $49,292 |

---

[1] The court amended its allocation of the marital estate in a post-trial order, and these values represent the court's amended permanent orders.

| | | |
|---|---|---|
| Horse | $1,500 | $0 |
| Public Employees' Retirement Association (PERA) Accounts | $75,857 | $75,857 |
| 403(b) Retirement Account | $37,026 | $0 |
| IRS Debt | $10,980 | $10,980 |
| Other Debt | $26,394 | $8,447 |
| **TOTAL** | **$280,430** | **$340,266** |

¶ 4    The court then directed wife to pay husband maintenance in the amount of $340 per month for a term of four years. And it declined to award husband attorney fees and costs under section 14-10-119, C.R.S. 2024.

## II.    Property Division

¶ 5    Husband contends that the district court's division of the marital estate was inequitable. He argues that the court erred by (1) allocating to him all the parties' personal property, other than vehicles, a horse, and retirement accounts; (2) determining that the value of that personal property was $49,292; and (3) not allocating to him a portion of wife's 403(b) retirement account. We consider and reject his contentions.

2

## A. Governing Legal Standards

¶ 6 The court has great latitude to equitably divide the marital estate in such proportions as it deems just based on the facts and circumstances of each case. *See* § 14-10-113(1), C.R.S. 2024; *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. "The key to an equitable distribution is fairness . . . ." *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988). We will not disturb a court's property division absent an abuse of discretion, which occurs only when the court's decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Medeiros*, ¶ 28.

¶ 7 When dividing the marital estate, the court must also determine the approximate current value of the marital property. *See In re Marriage of Wright*, 2020 COA 11, ¶ 4. In doing so, the court may select one party's valuation over that of the other party, or it may make its own valuation when it is reasonable in light of the evidence as a whole. *Medeiros*, ¶ 41. It is a party's duty to present the court with the requisite information to allow it to make a sufficient valuation, and the party's failure to provide that information does not provide it with grounds for reversal. *See In re Marriage of Rodrick*, 176 P.3d 806, 815 (Colo. App. 2007). We will

uphold the court's valuation when it has record support. *In re Marriage of Schmedeman*, 190 P.3d 788, 790 (Colo. App. 2008).

### B. Personal Property Allocation

¶ 8 Husband argues that when the court allocated the personal property, it did not consider the additional burden and the costs associated with obtaining the personal property's equity, which "artificially inflated the value of [his] portion of the marital estate" and, in turn, reduced the court's allocation of other more desirable marital assets to him. We are unpersuaded.

¶ 9 The parties agreed to retain Steve Cardinelli to appraise about 220 items of their personal property. Cardinelli valued husband's property at $22,054 and wife's property at $27,738.

¶ 10 Though neither party disputed the valuations, they disagreed on the allocation of these assets. Husband argued that each party should keep the personal property in their possession (except for a few additional items he requested from wife). Wife, however, argued that husband already took all the "good" items and that he should be allocated all the personal property. And she argued that he could use the equity from those items to help offset his request for financial assistance.

¶ 11 After considering the parties' competing requests, and in light of the court's allocation of other marital assets, the court allocated all the personal property to husband, which it valued at $49,292. In the event husband didn't want some or all of the personal property, the court ordered the property to be sold with husband to receive the sale proceeds.

¶ 12 The court's allocation of personal property was one determination, among others, it made to effectuate an overall disproportionate allocation of marital property in husband's favor. *See* § 14-10-113(1); *Medeiros*, ¶ 28. While husband may not have wanted all of the personal property, the court weighed the relevant factors and allocated these marital assets within its discretion based on the facts and circumstances of the case. *See In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) ("[A]n appellate court must not disturb the delicate balance achieved by the trial court in division of [marital] property . . . unless there has been a clear abuse of discretion."). That allocation is not manifestly unreasonably or arbitrary.

¶ 13 Husband now says that he will not receive the true value of the property — making the allocation unfair — because he will bear

the burden and cost of selling the property. But husband did not raise this issue in the district court; he did not present any evidence concerning potential costs or burdens related to the sale of the personal property or the effect on the remaining equity; and he did not argue that the court must consider such circumstances in its allocation. *See Schmedeman*, 190 P.3d at 790; *Rodrick*, 176 P.3d at 815. Because husband did not raise this issue at the permanent orders hearing, we will not consider it now. *See In re Marriage of Crouch*, 2021 COA 3, ¶ 13 (declining to address an issue raised for the first time on appeal); *see also Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66 ("Arguments made . . . for the first time in a post-trial motion are too late and . . . are deemed waived for purposes of appeal.").

¶ 14    Thus, the court acted within its discretion to allocate the personal property to husband.

### C.    Personal Property Value

¶ 15    Husband also contends that the district court erred by double counting items when it found that the value of personal property was $49,292. He argues that the court relied on Cardinelli's appraisal to assign this value to personal property but that this

6

appraisal included assets that the court separately allocated in its permanent orders. We discern no reversible error.

¶ 16    Before the permanent orders hearing, the parties executed a memorandum of understanding (MOU), in which they agreed that wife would receive a Sundowner horse trailer valued at $11,000 and a manure spreader valued at $127, and that husband would receive a Champion boat valued at $10,500 and two homemade trailers collectively worth $900. They also agreed that the value of a Honda ATV was $1,600 and subject to the court's allocation. The court adopted the MOU and allocated the assets in accordance with the MOU. The court also allocated the Honda ATV to husband but did not specify its value. Then, the court allocated to husband the personal property valued at $49,292, which was almost identical to Cardinelli's appraised value.[2]

¶ 17    Cardinelli's appraisal listed a "Champion Boat" worth $10,500, a "Homemade Trailer" worth $600, a "Trailer" worth $300, a "Millcreek Spreader" worth $127, a "Honda 4 Wheeler" worth

---

[2] The court's personal property value was about $500 less than Cardinelli's total appraised value. Because husband does not raise this slight variation as an issue on appeal, we do not address it.

$1,600, and a "Horse Trailer" worth $11,000. Husband argues that these were the same items separately allocated by the court and addressed in the MOU. Even if we assume that the court's allocation accounted for these assets twice, we will disregard errors that affect only a small percentage of the overall marital estate. *In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001); *In re Marriage of Zappanti*, 80 P.3d 889, 893 (Colo. App. 2003); *see* C.A.R. 35(c). The value of the Champion Boat, homemade trailers, Sundowner horse trailer, manure spreader, and Honda ATV totaled $24,127. That amounts to less than 4% of the approximately $620,000 marital estate. An error affecting such a small percentage of the overall marital estate does not warrant reversal. *See In re Marriage of Powell*, 220 P.3d 952, 957, 959 (Colo. App. 2009) (upholding the district court's refusal to use an expert's valuation of property that would have increased the marital estate by only 6.6%, in part, because it did not materially impact the property division); *see also Balanson*, 25 P.3d at 38 (suggesting that an error affecting less than 2% of the overall marital estate would be harmless).

¶ 18    We therefore conclude that any error in allocating personal property to husband worth $49,292 was harmless.

## D. Retirement Accounts

¶ 19    We also reject husband's contention that the district court abused its discretion by declining to allocate to him a portion of wife's 403(b) retirement account.

¶ 20    Husband argues that because the 403(b) retirement account was marital property, he was entitled to a portion of it. But a court is not required to divide each individual marital asset between the parties. Rather, it's required to equitably divide the entire marital estate. *See* § 14-10-113(1); *Medeiros*, ¶ 28. And when dividing the entire marital estate, the court allocated to husband other marital assets, from which he received over $340,000 of the marital equity. Given those allocations, the court determined that it was appropriate for wife to retain the 403(b) retirement account (worth approximately $37,000), which allowed her to receive approximately $280,000 of the marital equity. While husband wanted a different allocation, the court's overall allocation was equitable and within its discretion. *See Medeiros*, ¶ 28; *see also Hunt*, 909 P.2d at 538.

¶ 21    Husband also generally asserts that wife didn't properly disclose the 403(b) retirement account. But the record shows that, at the hearing, husband knew of the account, did not dispute its

value, and addressed its allocation. Because husband doesn't develop any legal or factual argument to establish how the purported inadequacy impacted the court's allocation or otherwise supports reversal, we decline to further address this undeveloped assertion. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29.

¶ 22 And to the extent husband now attempts to challenge the value of the 403(b) retirement account, arguing that wife failed to provide an updated balance for the account at the time of the hearing, husband did not challenge this value before the district court and raises it for the first time in his reply brief. We therefore decline to address it. *See id.* at ¶ 24; *see also Crouch,* ¶ 13.

¶ 23 Finally, husband objects that wife presented an outdated value of her PERA account at the hearing. But he develops no argument explaining how the absence of an updated account value affected his substantial rights when the court directed the parties to equally divide the PERA account based on its value on the date of the hearing. *See S.Z.S.,* ¶ 29.

¶ 24 We therefore are unpersuaded that the court abused its discretion by allocating the 403(b) retirement account to wife.

### III. Maintenance

¶ 25 Husband next contends that the district court abused its discretion by awarding him maintenance of $340 per month for a term of only four years. We disagree.

#### A. Governing Legal Standards

¶ 26 When awarding maintenance, the court must determine an amount and term of maintenance that are fair and equitable. § 14-10-114(3)(a)(II), (3)(e), C.R.S. 2024. To do so, the court considers the advisory guidelines on the amount and term of maintenance. § 14-10-114(3)(a)(II)(A), (3)(b). These guidelines are a starting point; they do not create a presumptive maintenance amount or term. § 14-10-114(1)(b)(II), (3)(e). The court then considers a nonexclusive list of statutory factors to determine the appropriate amount and term of maintenance, if any, based on the totality of circumstances. § 14-10-114(3)(a)(II)(B), (3)(c), (3)(e).

¶ 27 We will uphold the court's maintenance determination unless it is shown to be an abuse of discretion. *Medieros*, ¶ 58.

#### B. Discussion

¶ 28 When determining maintenance, the court found that husband's gross income was $4,967 per month, and it noted the

substantial equity he received from the marital estate. *See* § 14-10-114(3)(a)(I)(A)-(C), (3)(c)(I), (IV). The court found that wife's gross income was $8,583 per month. *See* § 14-10-114(3)(a)(I)(A), (3)(c)(II). It acknowledged that, in addition to this income, wife also owned a consulting business near the end of the marriage that had provided the parties with additional income, but it found that wife had to close that business. *See* § 14-10-114(3)(a)(I)(A), (C), (3)(c)(II), (III), (V). The court found that the parties enjoyed a comfortable lifestyle throughout their marriage, and that due to wife's recent increased income, they had lived a more luxurious lifestyle at the end of the marriage. *See* § 14-10-114(3)(a)(I)(D), (3)(c)(III).

¶ 29 The court determined that, based on the parties' gross incomes, the guideline amount of maintenance was $340 per month. *See* § 14-10-114(3)(b)(I)(C). And it found that given the length of their marriage (261 months), the guideline term was ten years. *See* § 14-10-114(3)(b)(II)(A)-(B).

¶ 30 Then, after considering the relevant circumstances, the court concluded that $340 per month for a four-year maintenance term was fair and equitable. The court noted the parties' ages in relation to retirement (husband was forty-seven and wife was fifty-two) and

its allocation of the PERA accounts. *See* § 14-10-114(3)(c)(I), (II), (IV), (IX). The court also explained that husband's portion of the marital estate, in addition to his other financial resources, would allow him to provide for his reasonable financial needs moving forward. *See* § 14-10-114(3)(c)(I), (IV). The court further found that the parties had reliable employment and that they both had made substantial contributions to the marriage. *See* § 14-10-114(3)(c)(V), (X). And the court recognized that wife had paid husband temporary maintenance for almost a year during the dissolution case, she was allocated a larger share of the marital debt, and, historically, she earned an income only slightly more than that of husband. *See* § 14-10-114(3)(c)(II), (IV), (VI), (VIII).

¶ 31 Husband argues that the court did not consider evidence and circumstances that could have supported a maintenance determination more favorable to him. He highlights the parties' higher standard of living toward the end of the marriage, wife's historically higher income, his non-economic contributions to the marriage, and his medical conditions that lessened his work capacity. But, contrary to his claims, the court considered the totality of circumstances, including many of those highlighted by

husband, and concluded that four years was a fair and equitable maintenance term.

¶ 32    Because the record supports the court's findings, we will not disturb its determination. *See In re Marriage of Atencio*, 47 P.3d 718, 722 (Colo. App. 2002) (providing that we will not disturb a court's maintenance determination when the record supports it); *see also In re Marriage of Evans*, 2021 COA 141, ¶ 45 ("We are not at liberty to re-evaluate the conflicting evidence and set aside [the court's] findings supported by the record."). Wife testified that their standard of living had historically been modest and that while they recently enjoyed a higher standard of living due to the additional income from her consulting business, she could no longer earn that additional income. And she said that, during the marriage, the parties' incomes were relatively equal and that there was only "a two or three thousand dollar a year difference" between them. Husband also confirmed that he earned almost $5,000 per month and had been employed at the same organization for fifteen years. Moreover, the court allocated to husband a greater share of the marital assets and a lower portion of the marital debt.

¶ 33    To the extent the court may not have directly addressed any circumstance highlighted by husband, the court did not need to make explicit findings on every factor. *See Wright*, ¶ 20; *see also In re Marriage of Collins*, 2023 COA 116M, ¶ 21 (recognizing that we may presume that the court considered all the evidence presented). The court's findings discussed the factors it found relevant, and those findings provide a clear understanding of the basis of its decision. *See Wright*, ¶ 20.

¶ 34    The court therefore did not abuse its discretion by ordering wife to pay maintenance in the amount of $340 per month for a four-year term.

## IV.    Attorney Fees and Costs

¶ 35    Husband next contends that the district court abused its discretion by declining to award him attorney fees and costs under section 14-10-119. We are unpersuaded.

¶ 36    To ensure that a party in a dissolution proceeding does not suffer undue economic hardship, a court may equitably apportion attorney fees and costs between parties based on their relative economic circumstances. *Collins*, ¶ 49; *see* § 14-10-119. We will

not disturb the court's decision absent a showing that it abused its discretion. *See Collins*, ¶ 51.

¶ 37 The court found that even though a gap existed in the parties' respective incomes, an award of attorney fees and costs was not necessary or appropriate. The court explained that when considering the property division (which allocated to him over $340,000) and the parties' financial resources, including the maintenance award, there was not a significant financial disparity between the parties and husband could pay his attorney fees.

¶ 38 The record supports the court's findings concerning the parties' relatively similar financial circumstances. And because we reject husband's claims of reversible error concerning the property division (and maintenance), we necessarily reject his argument that those errors warrant reconsideration of the court's denial of attorney fees and costs.

¶ 39 The court therefore acted within its discretion by declining to award husband attorney fees and costs.

## V. Disposition

¶ 40 The judgment is affirmed.

JUDGE TOW and JUDGE TAUBMAN concur.