23CA2001 Marriage of Pearson 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2001
Arapahoe County District Court No. 19DR31004
Honorable Michelle Elizabeth Jones, Judge

---

In re the Marriage of

Zulmacristina Fuquenez Pearson,

Appellee and Cross Appellant,

and

Marshall Lee Pearson,

Appellant and Cross Appellee.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Hulse Law Firm, P.C., Lauren M. Hulse, Littleton, Colorado, for Appellee and
Cross Appellant

Robinson & Henry, P.C., Kelly Snodgrass, Andrew H. Hug, Highlands Ranch,
Colorado, for Appellant and Cross Appellee

¶ 1    In this dissolution of marriage case, Marshall Lee Pearson (husband) appeals and Zulmacristina Fuquenez Pearson (wife) cross appeals  the permanent orders regarding property division, spousal maintenance, and attorney fees.  We affirm in part, reverse in part, and remand for further proceedings.

## I.    Relevant Facts

¶ 2    The parties married in 2005 and have one child.

¶ 3    In 2019, wife petitioned to dissolve the marriage.

¶ 4    In July 2021, following an evidentiary hearing, the district court dissolved the marriage and entered permanent orders.

¶ 5    The district court first found that husband's remainder interest in his family's Iowa farm was his separate premarital property.  The court emphasized, however, that the evidence was insufficient to identify whether that interest had appreciated during the marriage.  After stating that marital appreciation was "necessary to make the final allocation of debts and assets," the court gave wife extra time to obtain appraisals.  The court indicated that it would consider the appraisals along with any objections to determine "whether any further division should occur."

¶ 6    The district court then divided the rest of the marital estate:

- The court decided that husband's life estate interest in the Iowa farm was his separate property with no assignable value. But the court ordered the parties to split evenly any future "gross farm income" for the next twelve years.

- The court designated husband's student loan debt as his separate obligation and excluded it from the marital estate.

- The court found that husband's 401(k) had a current value of $203,902, with $30,795 stipulated as his separate premarital property. During the proceedings, he independently took out a $30,533 loan against the 401(k) and used some of the funds to unilaterally pay taxes separately, rather than jointly with wife. The court determined that his conduct violated the temporary injunction; ordered him to assume responsibility for the $30,533 loan and awarded the entire $203,902 value of the 401(k) to wife.

- The court allocated to wife a $10,000 debt from a loan she received from a friend and a $1,398 Apple credit card debt incurred for the child's phone.

¶ 7 In the end, the district court found that the marital debts far outweighed the marital assets. Because husband had a substantial income advantage, the court split the negative marital estate disproportionately, giving him a deficit of $128,757 and wife a deficit of $23,453.

¶ 8 Next, the district court directed husband to pay wife $4,000 per month in spousal maintenance for two years, followed by $3,750 per month for ten years, plus $20,000 for her attorney fees and costs.

¶ 9 In December 2022, a different district court judge held another hearing to assess the marital appreciation of husband's remainder interest in the Iowa farm. The court found that his remainder interest lacked a value. It further found that the value of his life estate interest in the farm had diminished as his father aged, resulting in no marital appreciation. It denied wife's request to present evidence of the parties' current financial circumstances and

declined to make any changes to the property division from the July 2021 permanent orders.

¶ 10    Husband appeals, and wife cross appeals.

## II.    Property Division

### A.    Governing Law and Standard of Review

¶ 11    When dividing a marital estate, a district court must first determine whether an asset is marital — that is, acquired during the marriage and subject to division — or separate property, which is shielded from distribution. § 14-10-113(1), C.R.S. 2024; *In re Marriage of Dale*, 87 P.3d 219 (Colo. App. 2003). Debts incurred during the marriage, like assets acquired during the marriage, are presumed to be marital. *See* § 14-10-113(3)*; see also In re Marriage of Speirs*, 956 P.2d 622 (Colo. App. 1997) (marital liabilities include all debts that a spouse incurs during the marriage). This presumption can be overcome by evidence establishing that the asset or debt in question falls within one of the exceptions listed in section 14-10-113(2). *In re Marriage of Zander*, 2021 CO 12, ¶ 16; *see In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. App. 2006). One such exception, as relevant here, applies when a spouse acquires property by gift, bequest, devise, or descent. § 14-

10-113(2)(a). Any appreciation of a spouse's separate property during the marriage is marital property subject to equitable division. *See* § 14-10-113(1)(d), (4).

¶ 12 Afterwards, the district court must enter findings on the approximate value of the spouses' assets, *In re Marriage of Wright*, 2020 COA 11, ¶ 4, including marital debts, *Jorgenson*, 143 P.3d at 1172. The court may select one spouse's valuation over that of the other or make its own reasonable valuation in light of the evidence as a whole. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 41. We will uphold the court's valuation when it has record support. *In re Marriage of Schmedeman*, 190 P.3d 788, 790 (Colo. App. 2008).

¶ 13 Finally, after setting aside separate property, the district court must divide the marital assets and debts in proportions it deems just, ensuring an equitable, but not necessarily equal, division. *See* § 14-10-113(1); *see also Wright*, ¶ 4; *Jorgenson*, 143 P.3d at 1172 (allocation of marital debts is in the nature of property division).

¶ 14 The district court has great latitude in making an equitable property division based on the facts and circumstances of each case, and we will not disturb its decision absent an abuse of discretion. *In re Marriage of Collins*, 2023 COA 116M, ¶ 19. The

court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Medeiros*, ¶ 28.

¶ 15 We accept the district court's factual findings unless clearly erroneous, meaning they are not supported by the record. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9; *see also In re Marriage of Dean*, 2017 COA 51, ¶ 8.

¶ 16 We review de novo, however, whether the district court applied the correct legal standard. *Medeiros*, ¶ 28.

### B.    Discussion

#### 1.    Husband's Student Loan

¶ 17 Husband contends that the district court erred by treating his $13,667 student loan as his separate property and excluding it from the property division. We agree.

¶ 18 The district court found that husband's student loan, initially reported as $6,834 in April 2021, had increased to a balance of $13,667 by the July 2021 hearing. Finding that the "debt" was solely intended to benefit his career going forward, the court classified it as his separate debt and removed it from the division of

the marital estate. We note that only the original $6,834 was excluded in the court's property division spreadsheet.

¶ 19   But because husband took out the student loan during the marriage, the entire balance of $13,667 is a marital debt and should have been allocated. *See In re Marriage of Morton*, 2016 COA 1, ¶ 6 (the district court erred by finding that all of the wife's student loans incurred after the filing of the petition for dissolution and before the entry of the decree were her separate debt); *see also Speirs*, 956 P.2d at 624 (a spouse's student loan obtained during the marriage constituted a marital debt and should have been allocated). The court, therefore, misapplied the law by excluding it from the marital estate. *See Collins*, ¶ 19; *see also Medeiros*, ¶ 28.

¶ 20   This error was not harmless. When viewed in relation to the overall property division, an error in dividing specific property is reversible only if the error affects the parties' substantial rights. *In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001); *see* C.A.R. 35(c). The court's omission resulted in a $13,667 error, which amounts to 9% of the negative $152,210 marital estate. An error affecting such a large percentage of the marital estate warrants reversal. *See Balanson*, 25 P.3d at 36; *see also Morton*, ¶ 8.

¶ 21    Therefore, we reverse this part of the permanent orders and remand the case to the district court to reclassify husband's student loan debt as marital, include it in the marital estate, and allocate it.  The court should then redetermine the entire property and debt division to achieve an equitable result, considering all relevant factors, including those listed in section 14-10-113(1).  *See Morton*, ¶ 14.  While the court may rely on the evidence at the permanent orders hearing, it must also allow the parties to present new evidence about their current economic circumstances.  *See* § 14-10-113(1)(c) (a district court considers the parties' economic circumstances at the time the property division "is to become effective"); *see also In re Marriage of Wells*, 850 P.2d 694, 696 (Colo. 1993) ("[S]ection 14-10-113(1)(c) requires a [district] court to consider the economic circumstances of the respective spouses at the time any hearing relating to the division of marital property is held, including a hearing following a remand for the purpose of dividing the property between the parties.").[1]

---

[1] Because the district court must consider the parties' existing circumstances on remand, we do not address wife's separate appellate argument concerning the same issue.

¶ 22    Because they may arise on remand, we address the parties'
other challenges to the property division.

### 2.    July 2021 Permanent Orders

¶ 23    Husband contends that the district court's division of the
marital estate in July 2021 was improper, as the estate was
incomplete due to the outstanding valuation of his remainder
interest in the Iowa farm.  Given that the property division is
reversed and requires a new equitable determination, we need not
address this issue.  *See In re Marriage of Krejci*, 2013 COA 6, ¶ 26.

### 3.    Husband's Remainder Interest

¶ 24    Wife opposes the district court's factual finding that husband's
remainder interest in the Iowa farm had not appreciated during the
marriage.  We discern no error.

¶ 25    It was undisputed that before the marriage, husband's father
granted him a 15% remainder interest in the Iowa farm.  Husband
will only take this interest after his father passes away; husband's
father was eighty-two years old at the time of the July 2021
hearing.  The district court determined, and wife does not dispute,
that husband's fractional remainder interest was his separate
property.  *See* § 14-10-113(2)(a).

9

¶ 26    To calculate the marital appreciation of husband's fractional remainder interest, wife's expert began with the "whole" farm's appraised fair market value of $3,136,000.  The expert then applied a formula that factored in, among other things, the Iowa actuarial tables, based on his father's age of eighty-two.  The expert ultimately determined that husband's fractional remainder interest had appreciated by $282,807 during the marriage.

¶ 27    The district court found that wife's expert mistakenly used a 45% remainder interest instead of 15%, rendering the expert's opinion "not useful."  The court also found the expert's approach too simplistic, as it failed to account for the specific and unique nature of husband's fractional remainder interest.

¶ 28    Unlike wife's expert, husband's expert applied marketability factors.  The expert testified that selling husband's fractional remainder interest required unanimous approval from all six owners, and that even then, partition costs would likely be prohibitively expensive.  Husband's expert added that husband's fractional remainder interest could not be mortgaged or liened.

¶ 29    Both experts testified they had no personal knowledge or experience selling such fractional remainder interests, as these are rarely sold on the open market.

¶ 30    The district court concluded that husband's fractional remainder interest had no value due to its lack of marketability. The court indicated that even if wife's valuation of $282,807 were accepted, a 99% discount would be appropriate due to the significant limitations of the interest.

¶ 31    Because the record, and the district court's credibility assessments, support its finding that husband's fractional remainder interest had not appreciated during the marriage, we discern no error.  *See Schmedeman,* 190 P.3d at 790; *see also In re Marriage of Antuna,* 8 P.3d 589, 593 (Colo. App. 2000) (determining that the sufficiency and credibility of valuation evidence, including the weight to be given to an expert's techniques, is within the district court's province).

¶ 32    Still, wife argues that the district court erred by not following *Beach v. Beach,* 56 P.3d 1125, 1130 (Colo. App. 2002), *rev'd,* 74 P.3d 1 (Colo. 2003), as "guidance for how to value [husband's] remainder interest."  But because she only quotes an excerpt from

the case without making any specific argument, we decline to address this issue.  *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (an appellate court will not consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development."); *Dean*, ¶ 31 (appellate court will not consider arguments in a reply brief that seek to expand on contentions raised in an opening brief).

### 4.    Husband's Life Estate Interest

¶ 33    Wife contends that the district court's valuation finding of husband's life estate interest in the Iowa farm was lacking.  We agree.

¶ 34    About six years into the marriage, husband's father transferred to husband complete ownership of his life estate in 45 percent of the Iowa farm, including all rights to collect income.

¶ 35    The district court found that the parties received rental income from the life estate from 2016 to 2018.  Husband reported, however, that the farm currently produced no income but testified that he

could receive income until his life estate interest expires (at which point his fractional remainder interest would vest).

¶ 36     The district court concluded that husband's life estate interest was his separate property and found it had no current separate value. Even so, the court ordered that any "future gross farm income" be split equally between the parties for the next twelve years. In a later order, the court stated that the life estate interest had value but found that it was diminishing as his father aged, resulting in no marital appreciation.

¶ 37     It is unclear whether the district court found that husband's life estate interest had value or appreciated during the marriage. *See Gibbs*, ¶ 9 (the district court must make sufficiently explicit findings of fact to give the appellate court a clear understanding of the basis of its order). Initially, the court seemingly dismissed any present separate value of husband's life estate interest based on the absence of any current rental income. Yet, the court also found that it could generate future "marital" income and distributed half to wife. Then, the court later acknowledged — based on expert testimony — that the interest did have some value, albeit diminishing, due to husband's father's aging.

¶ 38 Thus, the district court on remand must make additional findings clarifying whether husband's life estate interest in the Iowa farm had marital value or appreciated. *See id.* If so, the court must include the appreciation in the marital estate and allocate it.

### 5. Husband's 401(k) Loan

¶ 39 Husband, as we understand his argument, claims that the district court erred by finding that he violated the temporary injunction when he took out a loan against his 401(k), and by imposing a sanction that effectively "eliminated" his separate premarital interest in the 401(k). Again, we conclude that additional findings are necessary.

¶ 40 Upon wife's petitioning for dissolution of marriage in December 2019, an automatic temporary injunction entered. *See* § 14-10-107(4)(b)(I), C.R.S. 2024. The injunction prohibited either party "from transferring, encumbering, concealing, or in any way disposing of, without the consent of the other party or an order of the court, any marital property, except in the usual course of business or for the necessities of life." § 14-10-107(4)(b)(I)(A). Such a temporary injunction remains in effect until the final decree is

entered, the petition is dismissed, "or until further order of the court." § 14-10-107(4)(b)(I).

¶ 41 At the time of the July 2021 permanent orders hearing, husband's 401(k) was worth $203,902. The parties agreed that $30,795 was his separate premarital property. However, the district court found that while the proceedings were ongoing, he independently took out a $30,533 loan against his 401(k). The court further found that he unilaterally used a portion of the loan funds to pay his taxes separately, rather than jointly. According to husband, his separate tax filing raised his tax obligation by at least $2,300.

¶ 42 The district court determined that husband's actions amounted to "encumbering" or "depleting" "a marital asset" to cover his expenses. As a result, the court effectively "eliminated" his entire "separate property value" of $30,795, which effectively equaled the loan amount, and awarded wife the full value of the 401(k) at $203,902. Additionally, the court ordered him to assume sole responsibility for the loan.

¶ 43 We agree with husband that the district court did not make sufficient findings regarding whether his use of the funds from the

401(k) loan for taxes, which could arguably be considered a marital expense, fell within the "necessities of life" exception in section 14-10-107(4)(b)(I)(A). *See Gibbs*, ¶ 9. And if the court intended to find that his use of the loan funds was a dissipation of a marital asset, it failed to make specific findings about what exactly was dissipated and its value. *See Jorgenson*, 143 P.3d at 1173-74 (when a spouse has improperly dissipated assets in contemplation of dissolution, the district court may consider in the division the value of those assets as of the date they last existed); *see also In re Marriage of Campbell*, 140 P.3d 320, 322 (Colo. App. 2006) (case remanded for the district court to make specific findings concerning spouse's dissipation claim); *In re Marriage of Finer*, 920 P.2d 325, 331 (Colo. App. 1996) (same).[2]

¶ 44    On remand, the district court must determine whether husband's use of the 401(k) loan funds was a violation of the temporary automatic injunction or whether it qualifies as a

---

[2] For reasons not explained, the court inconsistently found wife's incursion of $1,140 in credit card debt to file taxes a marital debt subject to division.

dissipation of marital assets. The court must also enter explicit findings that clearly articulate the basis of its order. *See Gibbs*, ¶ 9.

### 6. Other Marital Debts

¶ 45 Husband contests the district court's valuation of the $10,000 loan to wife from her friend and the $1,398 Apple credit card balance for the child's phone. The court admitted wife's undisputed May 2021 sworn financial statement, in which she reported the personal loan debt and the Apple credit card balance. In it, she wrote that the loan covered a vocational expert and her basic monthly expenses. And referring to the statement, she testified that both debts were marital, as they were incurred during the marriage. We see no clear error because the record supports the court's findings and ultimate determination. *See Schmedeman*, 190 P.3d at 790.

### III. Maintenance and Attorney Fees

¶ 46 Husband raises several contentions regarding the propriety of the district court's maintenance award. Given our decision to reverse the property division, we need not address them.

¶ 47 Since maintenance is intertwined with the property division, the district court must redetermine both in light of the updated

property division. *See In re Marriage of de Koning*, 2016 CO 2, ¶ 26 ("[A]wards of spousal maintenance . . . flow from the property distribution."). And when the court reconsiders maintenance, it must base its decision on the parties' financial circumstances at the time of the remand. *See Wright*, ¶ 24.

¶ 48 Following the district court's reconsideration of property division and maintenance on remand, it must re-evaluate whether to award section 14-10-119, C.R.S. 2024, attorney fees and costs. *See de Koning*, ¶ 26; *Morton*, ¶ 33. In doing so, the court must avoid any double counting issues. *See In re Marriage of Cardona*, 2014 CO 3, ¶¶ 38-39.

IV. Disposition and Remand Instructions

¶ 49 We reverse the portions of the judgment involving husband's student loan debt, life estate interest in the Iowa farm, and 401(k). The judgment is otherwise affirmed, and the case is remanded to the district court to (1) reclassify husband's student loan debt as a marital debt and allocate it; (2) make additional findings on the value of husband's life estate interest in the Iowa farm and whether it appreciated; (3) make additional findings regarding whether husband's use of the 401(k) loan funds was for an improper

18

purpose under section 14-10-107(4)(b)(I)(A) or constituted dissipation; (4) reassess the property division in light of the above; and (5) revisit maintenance and section 14-10-119 attorney fees. The court should consider the parties' financial circumstances as of the time of remand.

JUDGE SCHOCK and JUDGE SULLIVAN concur.